# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

HILLSBOROUGH COUNTY AVIATION
AUTHORITY, a Florida independent special district,

                Plaintiff,

v.

TURO INC., a Delaware Corporation, and
multiple unknown JANE and JOHN DOE

                Defendants.

_____/

CASE NO. _____

State Court Case No. 19-CA-002677

## DEFENDANT TURO INC.'S NOTICE OF REMOVAL

Defendant Turo Inc. ("Turo"), by and through its attorneys of record, hereby files this Notice of Removal in the above-captioned matter, currently pending in the Circuit Court of the Thirteenth Judicial District in and for Hillsborough County, Florida. This removal is made pursuant to 28 U.S.C. §§ 1331, 1332, 1367, 1441, and 1446. Removal is proper because this action (1) presents diversity of citizenship and an aggregate amount in controversy that exceeds $75,000, and (2) invokes federal question jurisdiction. For the reasons set forth below, this Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1367.[1]

---

[1] Turo reserves its right to challenge this Court's exercise of personal jurisdiction over Turo, as Turo is not a citizen of Florida and lacks minimum contacts with Florida.

## BACKGROUND

**1.**   On or about March 13, 2019, Hillsborough County Aviation Authority ("Plaintiff") filed a Complaint in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, entitled *Hillsborough County Aviation Authority v. Turo Inc., et al.*, No. 19-CA-002677 (the "Complaint").   Plaintiff served the Complaint on Turo on March 22, 2019.   A copy of the Complaint is attached hereto as **Exhibit A**.

**2.**   Plaintiff alleges it is an independent special district existing under Chapter 2012-234, Laws of Florida, which grants Plaintiff exclusive jurisdiction, control, supervision and management over all public airports in Hillsborough County, Florida, including the Tampa International Airport ("Tampa Airport").   (*See* Ex. A ¶ 4.)

**3.**   Turo is a web-based platform that allows car owners and car users to connect with each other and coordinate peer-to-peer car sharing.   The Complaint alleges that Turo and Doe Defendants violate various state laws and federal regulations by delivering or picking up vehicles at Tampa Airport curbsides without an off-airport permit.   (*See id.* ¶¶ 67-70, 116-165.)

**4.**   Plaintiff alleges that it is a recipient of grants and funding from the Federal Aviation Administration ("FAA"), and Plaintiff imposes rules and regulations that govern traffic, parking, and business operations on its Tampa Airport property in compliance with its federal grant obligations, FAA regulations, and federal law.   (*See id.* ¶¶ 14, 16-17, 72-77, 90, 106, 110-111, 120, 125.)   Plaintiff further alleges, *inter alia*, that Turo's activities jeopardize Tampa Airport's federal funding.   (*See id.* ¶¶ 110-111.)   Plaintiff asserts causes of action for violation of airport regulations, trespass, civil conspiracy,

aiding and abetting trespass, unjust enrichment, and for an accounting. (*See id.* ¶¶ 115-165.) Plaintiff seeks preliminary and permanent injunctive relief, monetary damages, costs, and pre-judgment interest. (*See id.*.)

5. On March 25, 2019, Plaintiff filed a Motion for Temporary Injunction, and Turo received service on March 29, 2019. Turo has not yet answered or responded to the Complaint or the Motion for Temporary Injunction in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida. Turo is not aware of any other pending motions or briefs.

6. Pursuant to 28 U.S.C. § 1446(a), true and legible copies of all other papers on file with the state court and not previously referenced are attached to this Notice of Removal as **Exhibits B-G**.

7. Pursuant to 28 U.S.C. § 1446(d), Turo will file and serve written notice of the removal of this case with the Clerk of the Thirteenth Judicial Circuit in Hillsborough County, Florida and on Plaintiff's counsel. Turo will serve Plaintiff with this Notice of Removal and all documents filed in support thereof on the date of filing this Notice of Removal.

8. Nothing in this Notice of Removal shall constitute a waiver of Turo's right to assert any defense, including motions pursuant to Federal Rule of Civil Procedure 12, as the case progresses.

9. If the Court considers a remand, Turo requests the Court to issue an order to show cause why the case should not be remanded, giving the parties the opportunity to present briefing and argument prior to any remand. This procedure is appropriate

because pursuant to 28 U.S.C. § 1447(d), a remand order is not subject to appellate review.

## VENUE

**10.** Venue is proper under 28 U.S.C. § 1441(a) because this Court is the United States District Court for the district and division embracing the location where the state court case was pending.

## REMOVAL IS TIMELY

**11.** The Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b). Plaintiff filed its Complaint on March 13, 2019, and served the Complaint on Turo on March 22, 2019. (*See* Ex. A.) Turo filed this Notice of Removal within thirty (30) days of service, as required by law. *See, e.g., Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999).

## JURISDICTION PURSUANT TO 28 U.S.C. § 1332(a)

**12.** This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), and the action is removable to this Court pursuant to 28 U.S.C. §§ 1441(b) and 1446(c)(2)(B).

**13.** An action filed in state court is removable to federal district court if: (1) the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and (2) is between citizens of different states.   28 U.S.C. § 1332(a)(1).   These requirements are satisfied here.

**14.** Plaintiff alleges it is an independent special district with exclusive jurisdiction, control, supervision and management over Tampa Airport and all other

public airports in Hillsborough County.  (*See* Ex. A ¶ 4.)  Plaintiff is a citizen of Florida for purposes of diversity jurisdiction.

**15.**  Turo is a Delaware corporation with offices in San Francisco, California, and it is not registered in the State of Florida.  (*See id.* ¶ 5.)  Turo is a citizen of Delaware and California, but is not a citizen of Florida.

**16.**  Plaintiff also names Doe Defendants who allegedly reside and do business in Florida (*see id.* ¶ 7), but the citizenship of defendants sued under fictitious names is disregarded when determining if an action is removable on the basis of diversity jurisdiction.  *See* 28 U.S.C. § 1441(b)(1).

**17.**  Because Plaintiff is a citizen of Florida and Turo is not a citizen of Florida, the parties are diverse.

**18.**  As to the amount in controversy, Plaintiff alleges only that it makes a claim "in excess of $15,000.00 exclusive of interest and costs." (Ex. A ¶ 1.)  However, Plaintiff alleges that Turo is a rental car company and should pay the following fees and charges as a rental car company in order to operate at the airport: (a) a privilege fee of 8.5% gross receipts from October 1, 2016 to February 13, 2018, and a privilege fee of 9% gross receipts beginning on February 14, 2018; (b) a transportation facility charge of $2 per day for car bookings; (c) a fee of $2.50 per trip during the first year of the permit, $3.50 per trip during the second year of the permit, and $4.50 per trip during the third year of the permit.  (*Id.* ¶¶ 94-100.)  Plaintiff seeks payment of these fees and charges, as well as injunctive relief.  (*Id.* ¶¶ 115-165.)

**19.** While Turo does not accept Plaintiff's allegations and disputes every form of relief sought, the amount in controversy exceeds $75,000 based on the allegations of the Complaint.    Plaintiff alleges that Turo has violated its regulations and has been trespassing on its property since at least April 2017. (*See id.* ¶ 68.)  Since April 2017, Turo users have booked several thousand carsharing transactions at or near Tampa Airport and Turo has received over one million dollars in gross receipts.   Under Plaintiff's theory, Turo would be required to pay per-trip and transaction fees amounting to $4.50 to $6.50 for each of those several thousand trips, plus a fee of 8.5% to 9.0% on over one million dollars in gross receipts.   The gross receipts fees alone satisfy the amount in controversy.

**20.** Moreover, when a plaintiff seeks injunctive relief, as Plaintiff does here, the "amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." *Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1342 (11th Cir. 2018).  Plaintiff claims that injunctive relief is necessary to, among other things, stop Turo's actions that allegedly "jeopardize[] the Airport's federal funding[.]"  (Ex. A ¶ 110.)  On information and belief, Plaintiff receives millions of dollars in federal funding each year.  As a result, the amount in controversy exceeds $75,000 in light of Plaintiff's allegations in the Complaint and by the allegations Turo raises in this Notice.  *See* 28 U.S.C. § 1446(c)(2)(B); *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014) ("[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."); *see also Seguros Commercial America v. Hall*, 115 F. Supp. 2d 1371, 1376-77 (M.D. Fla. 2000)

(holding that an action should not be dismissed for failure to satisfy the amount-in-controversy requirement "unless it appears to a 'legal certainty' that plaintiff's claim is actually for less than the jurisdictional amount").

## JURISDICTION PURSUANT TO 28 U.S.C. § 1331

**21.** This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, and the action is removable to this Court pursuant to 28 U.S.C. §§ 1441(a) and 1367.

**22.** 28 U.S.C. § 1331 grants district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." A state law cause of action "arises under" federal law when it necessarily raises a disputed and substantial federal issue. *Gunn v. Minton*, 568 U.S. 251, 257 (2013).

**23.** Plaintiff relies on federal statutes and regulations to bring its claims. Plaintiff's Complaint invokes 49 U.S.C. §§ 47101 *et seq.*, which Plaintiff alleges authorizes the Federal Aviation Administration ("FAA") to pass regulations concerning safety and security, and the regulation of ground operations, at airports. (Ex. A ¶¶ 72-74.) Plaintiff further alleges that FAA regulations authorize and mandate that Plaintiff create the regulations that Turo allegedly violates. (*Id.* ¶¶ 75-77.) Each of Plaintiff's claims necessarily raise these federal law issues, although Turo strongly disputes that it has violated any federal law or regulation, or valid airport regulation arising from, or mandated by, FAA regulations. Turo further disputes that Plaintiff is authorized by federal law to misclassify Turo as a rental car company and enforce its regulations in the manner alleged in the Complaint.

**24.** Given this Court's jurisdiction pursuant to 28 U.S.C. § 1331, this action is removable pursuant to 28 U.S.C. § 1441(a), which provides that, "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

**25.** Supplemental jurisdiction also exists over the state and common-law claims Plaintiff asserts for violation of airport regulations, trespass, aiding and abetting trespass, civil conspiracy, unjust enrichment, and an accounting of revenues because these claims are so related to the federal claims described above that they form the same case or controversy. *See* 28 U.S.C. § 1367(a).

## CONCLUSION

**26.** Pursuant to 28 U.S.C. §§ 1331, 1332, 1367, 1441, and 1446, Turo respectfully requests that this action proceed before this Court as an action properly removed. This Notice of Removal is signed pursuant to Federal Rule of Civil Procedure 11.

Dated this 31st day of March, 2019.

_____
Hala A. Sandridge – Trial Counsel
Florida Bar No. 454362
BUCHANAN INGERSOLL & ROONEY
PC
401 E. Jackson Street, Suite 2400

Tampa, FL  33602-5236
Telephone:  (813) 222-8180
Facsimile:   (813) 222-8189
Email:  Hala.Sandridge@bipc.com

COOLEY LLP
MICHAEL G. RHODES (California State
Bar No. 116127)
(*pro hac vice forthcoming*)
MATTHEW D. BROWN (California State
Bar No. 196972)
(*pro hac vice forthcoming*)
BENJAMIN H. KLEINE (California State
Bar No. 257225)
(*pro hac vice forthcoming*)
BETHANY C. LOBO (California State Bar
No. 248109)
(*pro hac vice forthcoming*)
AMY M. SMITH (California State Bar No.
287813)
(*pro hac vice forthcoming*)
101 California Street, 5th Floor
San Francisco, CA 94111
Telephone:  (415) 693-2376
Facsimile:  (415) 693-2222
Email:     rhodesmg@cooley.com
           brownmd@cooley.com
           bkleine@cooley.com
           blobo@cooley.com
           amsmith@cooley.com

*Attorneys for Defendant Turo Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 31, 2019, a true and accurate copy of the

foregoing has been furnished through the E-Filing Portal to:

Keith A. Graham, Esquire
MARCHENA and GRAHAM, P.A.
976 Lake Baldwin Lane, Suite 101
Orlando FL, 32814
Email:  kgraham@mgfirm.com

*Attorneys for Hillsborough County Aviation Authority*

/s/
Hala Sandridge
Florida Bar Number:  454362

# EXHIBIT A

Filing # 86340668 E-Filed 03/13/2019 03:43:21 PM

IN THE CIRCUIT COURT OF THE
THIRTEENTH JUDICIAL CIRCUIT, IN
AND FOR HILLSBOROUGH COUNTY,
FLORIDA

HILLSBOROUGH COUNTY AVIATION
AUTHORITY, a Florida independent special district

      Plaintiff,

v.                                CASE NO.

TURO INC., a Delaware Corporation,
and multiple unknown JANE and JOHN DOE

      Defendants.

_____/

## VERIFIED COMPLAINT

Plaintiff, the HILLSBOROUGH COUNTY AVIATION AUTHORITY ("Aviation Authority"), by and through its undersigned attorneys, sues the Defendants, TURO INC. ("Turo"), a Delaware corporation, and multiple unknown JANE and JOHN DOE (collectively the "Turo Operators") and states:

## JURISDICTION, PARTIES, AND VENUE

1.     This is an action for injunctive relief and monetary damages in which the amount in controversy is in excess of $15,000.00 exclusive of interest and costs, an amount within the jurisdiction of this Court by virtue of Section 26.012, Fla. Stat. (2018).

2.     The Court has jurisdiction over this action, which seeks temporary and permanent injunctions to preclude Defendants' continued trespass, damages and an accounting resulting

1

from Defendants' unauthorized commercial ground transportation activity at Tampa International Airport.

3.     Turo is subject to the jurisdiction of this Court because it operates, engages in and/or carries on a business or business venture in the State of Florida (the "State") and because it committed tortious acts within this State pursuant to Section 48.193, Fla. Stat. (2018).

4.     The Aviation Authority is an independent special district validly existing under Chapter 2012-234, Laws of Florida, as amended (the "Act"), which grants the Aviation Authority the exclusive jurisdiction, control, supervision and management over all public airports in Hillsborough County, Florida (the "County"), including the Tampa International Airport.

5.     Defendant, Turo Inc., is a Delaware corporation, with an address of 116 New Montgomery Street, Suite 700, San Francisco, California 94105, that is not registered to do business in the State of Florida. Turo operates a web-based rental car enterprise that collects car rental and related fees from Florida car rental customers, for cars owned by Turo agents, including the Jane and Joe Co-Defendants, which Turo rents through Turo's app and website to car rental customers who are solicited and identified by Turo.

6.     Turo is currently and has at all material times engaged in business in Hillsborough County, Florida, in concert with, as an agent, and affiliate of multiple unknown Jane and John Doe Co-Defendants herein, to arrange for and collect the car rental fees for car rental deliveries and pickups of its Jane and John Doe Co-Defendant agents' rental cars at the Tampa International Airport.

2

7.     The multiple unknown Jane and John Doe Defendants are all unknown Turo agents and affiliates who reside in Hillsborough and neighboring counties, and who have engaged in business in Hillsborough County, Florida with Turo, by delivering and/or picking up rental cars to Turo customers, or conducting other unauthorized commercial ground transportation activities on Tampa International Airport property in exchange for Turo providing rental car advertising, customers and paying Jane and John Doe Co-Defendants a portion of the car rental and related fees collected by Turo through its app and website.

8.     Venue is proper in Hillsborough County, Florida, pursuant to Section 47.051, Fla. Stat. (2018), because multiple Defendants reside in Hillsborough County, Florida, all Defendants do business in Hillsborough County, Florida, and all of the causes of action alleged herein accrued in Hillsborough County, Florida.

9.     The Aviation Authority has retained the undersigned counsel to prosecute this action against the Defendants.

10.     All conditions precedent to the filing of this action have occurred, been satisfied or have been waived.

## BACKGROUND ALLEGATIONS

11.     The Aviation Authority operates the Tampa International Airport (hereinafter referred to interchangeably as the "Airport" or "TPA") in Tampa, Hillsborough County, Florida, pursuant to authority delegated to it by the State.

12.     Pursuant to the Act, the Aviation Authority "shall manage airport facilities and grant airport concessions to further the development of commerce and tourism in or affecting the Tampa Bay area and the [s]tate." 2012 Fla. Laws 234.

3

13.     In managing its facilities and granting concessions for services to the public, the Aviation Authority shall promote the development of commerce and tourism by, among other things, "[l]imiting or prohibiting business competition which is destructive to the ends of promoting commerce and tourism in the state." *Id.*

14.     The Aviation Authority is also the Airport sponsor, as a recipient of financial funding for airport development from the Federal Aviation Administration (the "FAA") under the Airport Improvement Program, authorized by the Airport and Airway Improvement Act of 1982, as amended, 49 USC § 47101, *et seq.*

15.     TPA is an international airport that is, based on passenger traffic, the 4th busiest airport in the State, the 29th busiest airport in the United States, and the 111th busiest airport in the world.

16.     Given the number of individuals who use TPA's roadways and facilities, the Aviation Authority must strictly regulate traffic, parking and business operations on its property to ensure public safety and convenience, to enhance efficiency and productivity at TPA, and to comply with its federal grant obligations.

17.     For this reason, the Aviation Authority, through its Rules and Regulations No. R340 for Tampa International Airport (2017) (the "Rules and Regulations"), Aviation Authority Policy P310: Commercial Ground Transportation (the "Commercial Ground Transportation Policy"), and Aviation Authority Policy P822: Off-Airport Rental Car Companies (the "Off-Airport Rental Car Policy") (collectively referred to herein as the "Regulations"), imposes restrictions on individuals and entities that bring vehicles onto Airport property for commercial purposes, including requiring that such individuals and entities obtain a contract or permit, pay

4

fees, and comply with designated traffic routes and parking requirements, which have all been violated by the Defendants.

18.     Congestion is a particularly serious problem at TPA, given that tens of thousands of vehicles traverse the Airport's roadways and park on Airport property on a daily basis.

19.     The Aviation Authority has attempted to address Airport congestion by opening a Rental Car Center away from the Airport Main Terminal with a dedicated curbside for off-airport rental car companies and by requiring these off-airport rental car companies to pick-up/drop-off customers at the Rental Car Center curbside.

20.     The Aviation Authority monitors and enforces these restrictions through its contract terms and permit requirements.

21.     By requiring that off-airport rental car companies conduct pick-ups and drop-offs in areas other than the Main Terminal curbsides, the Aviation Authority significantly reduces congestion at the Airport Main Terminal for arriving and departing air travelers.

22.     The Airport receives no local tax dollars.

23.     Rental car fees are a major source of income for the Airport.

24.     The Aviation Authority generates significant operating revenue from sources such as rental cars, parking, commercial ground transportation and other user fees, which constituted approximately 46% of TPA's operating budget in Fiscal Year 2017-2018.

25.     There are two types of rental car companies that operate at TPA, each of which is subject to a consistent set of contract/permit and fee requirements.

5

26.    "On-airport" rental car companies obtain a concession through a competitive procurement process to lease physical space on Airport property for the convenience of their customers.

27.    Other companies, called "off-airport" rental car companies, maintain facilities outside Airport property but access Airport travelers and are granted the use of certain designated Airport roadways and operating areas to pick up and drop off their customers.

28.    The Aviation Authority imposes the same basic contract/permit terms and fees on all "on-airport" rental car companies that operate at TPA.

29.    The Aviation Authority imposes the same basic contract/permit terms and fees on all "off-airport" rental car companies that operate at TPA.

30.    This consistent regime preserves fair competition and ensures that individuals and entities that derive commercial benefit from TPA's facilities pay their fair share of maintaining those facilities.

31.    In Fiscal Year 2017-2018, there were eleven rental car companies (representing eighteen rental car brands) that operated at TPA pursuant to valid permits/contracts and paid the applicable fees.

32.    Collectively, those eleven companies paid approximately $43,870,922 in fees to operate at TPA in Fiscal Year 2017-2018.

33.    Defendant, Turo is a web-based rental car enterprise that rents cars owned by Turo affiliates to the car rental customers who are solicited and billed by Turo.

34.    Turo posts available rental cars on its website and mobile application ("app"), provides tailored search functions for prospective renters, receives rental car requests, processes

6

reservations and payments, and retains a percentage of the proceeds from each rental car transaction (usually 25%, depending on the insurance coverage selected).

35.    Turo's website, available at https://turo.com, describes its business as a competitor of "traditional" rental car companies and repeatedly uses phrases like "way better than a rental car," "skip the rental counter" and "not your typical car rental":



36.    In competing with "traditional" rental car companies, Turo claims two distinguishing advantages: lower cost and the convenience of vehicle delivery.

7

37. Turo's homepage advertises that customers can "bypass the rental counter" and "pick up your rental or get it delivered, wherever you need it, up to 35% less than traditional agencies":

# Way better than a rental car

Bypass the rental counter and book unforgettable cars from friendly locals

THE CAR YOU WANT

Choose from over 800 unique makes and models from affordable daily drivers to rare specialty cars.

WHERE YOU WANT IT

Pick up the car or get it delivered, wherever you need it, up to 35% less than traditional agencies.

Book the perfect car

38. While Turo does not own its Co-Defendants' vehicles that Turo rents to the public, Turo nonetheless offers a full-service rental car experience comparable to that offered by "traditional" rental car companies.

39. Turo tells prospective renters on its website, "[w]e'll be here for you every step of the way during your trip," and promises insurance coverage, "24/7 roadside assistance" and "24-hour customer support."

40. Turo also touts its thorough safety and screening procedures, claiming on its website that "[y]our safety is a top priority." Turo's "Trust and safety" page tells prospective renters, "YOU'RE PROTECTED. Each car on Turo must meet our rigorous eligibility standards for safety, condition, and operations."

8

41.     For its Co-Defendant agents and affiliate car owners, the "Trust and safety" page has a similar message: "YOU'RE SAFE. We screen each traveler, so you can be confident when you hand over your keys."

42.     Turo's car owners, agents and renters are required to register, reserve the rental cars, and pay Turo on the Turo website or app.

43.     In addition to screening renters, Turo offers car owners a variety of other supportive services, including free professional photography for vehicles and a pricing algorithm designed to maximize profits.

44.     Automobile owners who desire to have Turo rent their cars have an option of setting the daily rental rate or using Turo's automatic pricing option, which sets the car rental price based on market values, location, time of year, and other data used by Turo.

45.     At the time the reservation is made on the Turo website or app, Turo charges the car renter full cost for the car rental transaction by billing the renter's credit card on file in the renter's account on the Turo website or app.

46.     Turo pays its Co-Defendants their portion of the Turo car rentals by direct deposit, initiated by Turo 30 minutes after the rental ends, or if a rental is for more than a week, Turo remits its Co-Defendants' rental car payment at the end of each week.

47.     Consistent with the comprehensive car rental services it offers, Turo carries or enforces a number of standardized umbrella policies that cover all Turo rental transactions.

48.     Turo has detailed "Terms of Service," a cancellation policy, an extension and late return policy, a minimum rental duration, a late fee schedule, a smoking policy, a pet policy, a

9

fuel policy, a toll policy, a security deposit policy, a street parking policy, a nondiscrimination policy, and community guidelines on the Turo website and app.

49.     Turo also has a policy governing the removal of copyrighted material from car listings and reserves the right to modify listings on the app and website at its discretion.

50.     Turo's Co-Defendant car owner agents must comply with Turo's many policies or risk termination from Turo.

51.     Indeed, Turo reserves the right to remove car owners or listings from the app and website for any reason or no reason.

52.     In the event that a vehicle is not returned by the end of the reservation, is found illegally parked, apparently abandoned, or used in violation of applicable law or Turo's Terms of Service, Turo has the option to repossess the vehicle.

53.     In sum, the Turo and its Co-Defendants' rental car experience is standardized and controlled by Turo down to the small details.

54.     Airport car rentals constitute part of Turo's business model and advertising.

55.     On Turo's "How Turo works" page, airport rental car delivery is one of three options provided for Turo and its Co-Defendants' to rent cars using Turo's app and website:

10



56. In multiple places on its website, Turo affirmatively advertises as an "alternative to airport car rentals" and promotes that Turo's agents deliver rental cars to customers at over 300 airports, including TPA.



11

57.     Turo also emphasizes on its "Owners tools" page that, "One thing that really distinguishes Turo from traditional rental car agencies is the unparalleled convenience of delivery."

58.     In addition to the promotional language on its website, Turo structures its website functions and default options to facilitate car rental transactions at TPA.

59.     For instance, Turo aggregates listings that offer TPA car rental pickups and drop-offs under a single easily searchable tab called "TPA – Tampa International Airport, Tampa, FL."

60.     When prospective car renters in Tampa click the search box on Turo's homepage to input their desired location, a dropdown menu pre-populated by Turo lists "TPA – Tampa International Airport" as one of the suggested locations.

61.     Similarly, Turo promotes its airport delivery option to car renters on its "Tampa" page, which lists "TPA – Tampa International Airport, Tampa, FL" as one of the suggested search options for nearby car rental locations, advises renters to "[s]kip the rental counter" and provides a "search TPA" button.

12



62.     When a prospective car renter selects the suggested search option for "TPA –

Tampa International Airport, Tampa, FL", he or she is directed to a long list of cars available for

rent displayed under the words "Skip the rental counter. 198 cars at TPA – Tampa International

Airport, Tampa, FL". Many of those 198 listings expressly offer delivery to TPA.

63.     Turo further explains the logistics of airport delivery of its advertised car rentals

on the page called: "How does airport delivery work?"

64.     On that page, Turo notes that its Co-Defendant car owner agents and renters often

meet at "the departures curb" or an airport "cellphone lot."

65.     Another option, Turo suggests, is for the car owner to leave the rental car in an

airport parking lot "with a key in a lockbox."

66.     On its website, Turo advertises "car rental alternatives near Tampa International

Airport" and provides reviews by previous renters dating back to December 31, 2017 describing

13

their experiences engaging in rental car transactions through Turo and the Jane and John Doe Co-Defendants at the Airport.

67.     Neither Turo nor any Co-Defendants have obtained a contract or permit as required by the Aviation Authority to conduct commercial rental car or any other commercial ground transportation activities on Airport property, and accordingly both Turo and its Co-Defendants have violated the Aviation Authority's Regulations.

68.     On April 28, 2017, September 18, 2018 and January 9, 2019, the Aviation Authority sent a cease and desist letter to Turo advising that Turo was violating the Aviation Authority's Regulations and was therefore trespassing, a copy of which cease and desist letters are attached hereto as Exhibit "A".

69.     On at least eight occasions between December 3, 2018 and December 5, 2018, Defendants engaged in rental car transactions on Airport property using the Turo website or app.

70.     Of the eight occasions, three (3) involved Turo Operators delivering or picking up rental vehicles curbside at the Airport Main Terminal; two (2) involved Turo Operators delivering and picking up rental vehicles to the Airport passenger in the Short Term Parking Garage; and three (3) involved a parked rental vehicle that was picked-up and returned to the Economy Parking Garage at the Airport, all without a permit or contract with the Aviation Authority, in multiple violations of the Aviation Authority's Regulations.

71.     As set forth herein, the following Regulations provide the framework for required contracts or permits and permissible commercial rental car activities that apply to the Defendants' unauthorized commercial ground transportation operations at the Airport.

14

## THE REQUIREMENTS OF THE AVIATION AUTHORITY'S REGULATIONS

72.    As a recipient of federal funding, the Aviation Authority is obligated to comply with its federal grant assurances and related Federal law, 49 USC § 47107.

73.    Responsibility for monitoring and ensuring airport sponsor compliance with applicable federal obligations is vested in the Secretary of Transportation by 49 USC § 47107 and delegated to the FAA. *See* 49 USC § 47122.

74.    The FAA is authorized to promulgate regulations and issue orders necessary to carry out its obligations under the Federal Aviation Act and the Airport and Airway Improvement Act of 1982. *See* 49 U.S.C. § 40113(a).

75.    FAA Order 5190.6B, Airport Compliance Manual (hereinafter the "FAA's Compliance Manual"), sets forth the policies and procedures for the FAA Airport Compliance Program, which "ensures airport sponsors' compliance with their federal obligations in the form of grant assurances, surplus and nonsurplus obligations, or other applicable federal law." *See* FAA Order 5190.6B, coversheet.

76.    Grant Assurance 19, Operation and Maintenance, requires "the airport and all facilities which are necessary to serve the aeronautical users of the airport. . .shall be operated at all times in a safe and serviceable condition. . . as may be required or prescribed by applicable Federal, state and local agencies for maintenance and operation." *See* Airport Sponsor Assurances (2014).

77.    To comply with its operation and maintenance requirements, the sponsor is required "to protect the public using the airport by adopting and enforcing rules, regulations and ordinances as necessary to ensure safe and efficient flight operations" and "to maintain and

15

operate the aeronautical facilities and common-use areas for the benefit of the public." *See* FAA Order 5190.6B, Section 7.8.

78.     In addition, the State granted the Aviation Authority the power, pursuant to Section 6 of the Act, to "[a]dopt and amend rules, regulations, and policies that are reasonably necessary to implement [the] Act," to "[f]ix, alter, charge, establish, and collect rates, fees, rentals and other charges...for the services of [Aviation] Authority facilities at reasonable and uniform rates," and to "fix and enforce penalties for the violation of the Act or a rule, regulation, or policy adopted in accordance with the Act." *See* 2012 Fla. Laws 234.

79.     Pursuant to the authority granted by the State and to comply with its federal grant obligations, the Aviation Authority adopted the Regulations, which establish a framework for the permit and contract requirements and permissible commercial ground transportation activities at the Airport.

80.     Pursuant to the Commercial Ground Transportation Policy, the purpose of the Aviation Authority's regulation of commercial ground transportation services is to ensure acceptable standards of service to the public; avoid congestion of Airport roadways, curbsides and parking areas; ensure appropriate revenue is received by the Authority from those providing commercial ground transportation services at the Airport; and ensure compliance with the operating procedures for ground transportation and other applicable Airport Rules and Regulations. *See* Commercial Ground Transportation Policy, at 1.

81.     The Commercial Ground Transportation Policy requires that "all commercial ground transportation services regularly serving the [A]irport must show evidence of adequate liability insurance coverage; must operate under the terms of a current contract or permit with the

16

Authority; must park, load and unload passengers only in those areas or locations on the airport specifically designated for such purposes; and must abide by all operating procedures specifically established for commercial ground transportation and all other applicable airport rules and regulations." *See* Commercial Ground Transportation Policy, at 2-3.

82.     The Aviation Authority's Rules and Regulations prohibit a person for any business, commercial, or revenue producing purposes, from conducting any business, commercial enterprise or activity on Airport property without first obtaining a written contract, permit or other form of written authorization from the Aviation Authority. §2.2.

83.     In addition, the Off-Airport Rental Car Policy states "[a]ll off-airport rental car companies deriving income from business generated at the Airport must enter into an agreement with the Authority to perform any portion of their business on the Airport." *See* Off-Airport Rental Car Policy, at 1.

84.     To control and reduce traffic and parking congestion, the Rules and Regulations require that "[a]ll Commercial ground transportation operators and Transportation Network Companies, unless otherwise provided by agreement or permit with the Authority, will only be allowed to deliver customers to the Airport and to meet pre-reserved customers at the Airport in places designated by the Authority." §8.1.

85.     The Aviation Authority "will provide appropriate and convenient facilities to permit the efficient operation of rental cars and other commercial ground transportation vehicles", which will be "consistent with the operational and physical constraints imposed by the limited availability of space at the passenger terminal complex and elsewhere." *See* Commercial Ground Transportation Policy, at 2.

17

86.    In addition, the Aviation Authority "will allocate available vehicle parking, loading and unloading in the transportation centers, and elsewhere for use by commercial ground transportation services". *See* Commercial Ground Transportation Policy, at 3.

87.    The Off-Airport Rental Car Policy further requires "[a]ll off-airport rental car companies will transport their customers to the Airport and meet their customers at the Airport in locations designated by the Authority." *See* Off-Airport Rental Car Policy, at 2.

88.    With regard to fees and charges, the Commercial Ground Transportation Policy provides that "the Aviation Authority will establish and collect fees and charges from the operators of airport commercial ground transportation services to ensure that the Authority generates the appropriate revenue from the provision of these services.  In establishing such fees and charges, the Authority will include the recovery of the costs of constructing the facilities used by each ground transportation service, and the Authority's maintenance, operational, administrative, and enforcement costs associated with such facilities." *See* Commercial Ground Transportation Policy, at 3.

89.    The Commercial Ground Transportation Policy fees are important to maintain the Airport's improvements and future financial viability.

90.    The ground transportation fees are also mandated by federal law, which requires that the Aviation Authority adopt "a schedule of charges for use of [its] facilities and services" that renders the Airport "as self-sustaining as possible" as a condition for federal grants. (49 U.S.C. § 47107(a)(13)(A).  *See also* 49 U.S.C. § 47101(a)(13) [articulating federal policy that airports be as financially self-sustaining as possible].)

18

91.    49 U.S.C. 47107(l)(1) requires the establishment of policies and procedures to "assure the prompt and effective enforcement" of the revenue use and self-sustainability requirements under 49 U.S.C. § 47107(a)(13)(A) by providing the Secretary of the Department of Transportation with the statutory authority to adopt more detailed guidance on permitted and prohibited uses of airport revenue. *See* 64 FR 7696, 7701.

92.    Accordingly, the FAA's Compliance Manual requires that "[r]ates charged for nonaeronautical use of the airport must be based on fair market value," which "can be determined by reference to negotiated fees charged for similar uses of the [A]irport". *See* FAA Order 5190.6B, 17.11 and 17.12.

93.    The Aviation Authority's Off-Airport Rental Car Policy states that "Off-Airport rental car agreements will establish fees due to the [Aviation] Authority for the right to do business on the Airport." *See* Off-Airport Rental Car Policy, at 1.

94.    Each off-airport rental car company is required to pay the Aviation Authority a Transportation Facility Charge, Privilege Fee, and Per-Trip Fees. *See* Off-Airport Rental Car Policy, at 1-2.

95.    Pursuant to the Aviation Authority Resolution No. 2014-37, all off-airport rental car companies are required to pay the Aviation Authority a Transportation Facility Charge in the amount of $2.00 per rental transaction day (i.e. each 24-hour period), effective beginning on April 1, 2014.

96.    The Aviation Authority "may also charge a privilege fee representative of the special benefit a particular class of business derives from the airport and its use thereof." *See* Commercial Ground Transportation Policy, at 3.

19

97.     The Privilege Fee is "a set percentage of the gross receipts received by the off-airport rental car company from Airport generated business." *See* Off-Airport Rental Car Policy, at 1.

98.     Each off-airport rental car company was required to pay Privilege Fees in the amount of 8.5% of gross receipts from October 1, 2016 to February 13, 2018, and 9% of gross receipts beginning February 14, 2018. *See* Use and Permit Agreement for Off-Airport Rental Car Concessions, Section 5.01.

99.     In addition, an off-airport rental car operator is assessed Per-Trip Fees for each time its vehicles enter the Airport property and pick-up one or more Airport customers. *See* Use and Permit Agreement for Off-Airport Rental Car Concessions, Section 2.05.

100.    Each off-airport rental car company will pay a Per Trip Fee of $2.50 per trip during the first year of an operator's agreement, $3.50 per trip during the second year of the agreement, and $4.50 per trip during the third year of the agreement. *See* Use and Permit Agreement for Off-Airport Rental Car Concessions, Section 5.04, effective beginning on August 1, 2017.

## DEFENDANTS' COMMERCIAL GROUND TRANSPORTATION OPERATIONS UNDERMINE THE LEGITIMATE PUBLIC INTEREST PURPOSES OF THE REGULATIONS

101.    By not obtaining a required contract or permit from the Aviation Authority and violating the Regulations, Defendants undermine the Aviation Authority's objective of providing ground transportation services consistent with public safety.

102.    To promote the efficient movement of passengers to and from the Airport, the Commercial Ground Transportation Policy states that Aviation Authority will provide a system

20

where commercial ground transportation operators pick up and drop off passengers at the Airport.

103.    Rental car companies are prohibited from conducting commercial ground transportation services curbside at the Main Terminal at TPA, in order to provide less congestion for the primarily non-commercial private vehicles.

104.    By funneling commercial ground transportation activity to the Rental Car Center, Airport Quad Lots, and elsewhere, the Aviation Authority reduces congestion and other adverse impacts to the limited curbside space available at the Main Terminal, where passengers need access to be picked up or dropped off safely by friends and family.

105.    Defendants have undermined the efficiencies of the Aviation Authority's traffic flow system by conducting their commercial ground transportation operations curbside at the Main Terminal, in parking garages at the Airport, and in other areas of the Airport where commercial rental car activity is prohibited, thereby increasing congestion and impairing the efficient movement of passengers, in violation of the Aviation Authority's Regulations.

106.    The Aviation Authority also seeks to provide fair, respectful competition among providers of ground transportation services and to comply with the Federal Grant Assurances requiring it to operate the Airport safely and in a self-sustaining manner, pursuant to Federal law.

107.    An objective of the Commercial Ground Transportation Policy is to avoid "destructive competition which would impair the quality of services to the public or lead to uncertainty, disruption or instability of commercial ground transportation services at the airport." *See* Commercial Ground Transportation Policy, at 2.

21

108.    Defendants' failure to obtain a contract or permit and follow the Aviation Authority's Regulations allows Defendants to unfairly undercut the prices of authorized commercial ground transportation operators, allows Defendants to obtain a non-monetary competitive advantage by operating at the Airport in areas where other commercial ground transportation operators that must comply with the Aviation Authority's Regulations cannot, and hinders the Aviation Authority's ability to be self-sustaining and conduct safe and efficient airport operations.

109.    Defendants have utilized the passenger parking garages and parking lots on Airport property to park rental cars for their commercial purposes, which interferes with the Aviation Authority's efforts to make adequate parking available for Airport passengers.

110.    Defendants' continued trespasses at the Airport to conduct unauthorized commercial ground transportation operations on Airport property undermines the objectives of the Aviation Authority's Regulations, jeopardizes the Airport's federal funding by preventing the Aviation Authority from complying with its federal grant obligations, and gives rise to an irreparable harm with no adequate remedy at law, which cannot be solely remedied by money damages.

111.    The injury to the Aviation Authority consists of the breakdown of its ground transportation system, violation of its federal grant obligations, and loss of revenue, which outweighs any potential harm to the Defendants if they are prohibited from entering Airport property without first complying with the same operational, fee, and reporting requirements that apply to all other commercial ground transportation operators at the Airport.

22

112.    As a result of the Defendants' failure to comply with the Aviation Authority's Regulations, the Aviation Authority lacks the information required to quantify all of Turo and the Turo Operators' violations of the Regulations to calculate the resulting damages.

113.    Defendants' continued trespasses to conduct unauthorized commercial ground transportation operations at the Airport undermines the fair, competitive environment required by the Regulations, avoids compliance with the safety, traffic and parking regulations established by the Regulations, and unfairly takes business from authorized commercial ground transportation operators who are incurring costs to comply with the governing Regulations, thereby reducing the revenues the Aviation Authority collects and frustrating multiple other non-revenue objectives of the Aviation Authority's Regulations.

114.    Authorized commercial ground transportation operators may avoid servicing the Airport if the Defendants are allowed to continue trespassing at the Airport and violating the Regulation's operating and fee requirements to obtain these unfair competitive advantages in violation of the Aviation Authority's Regulations.

### COUNT I- VIOLATION OF THE REGULATIONS AGAINST DEFENDANTS
**(Preliminary and Permanent Injunctive Relief)**

115.    The Aviation Authority reincorporates the allegations contained in paragraphs 1 through 114 as set forth more fully herein.

116.    The Aviation Authority is empowered to enforce the Regulations in order to ensure the objective to promote high quality and reasonably priced ground transportation services, while also maintaining public safety, traffic flow, parking and convenience, to ensure the efficient movement of passengers to and from the Airport, to foster respectful competition

23

among providers of ground transportation services, and to develop revenues for support of the Airport.

117.   Defendants have no right to conduct their car rental business at the Airport for commercial gain in violation of the Aviation Authority's Regulations, and to hold themselves out to the public as providing commercial rental car services at the Airport without first complying with the requirements of the Regulations.

118.   Defendants continued unauthorized commercial ground transportation operations at the Airport undermine the objectives of the Regulations and give rise to an irreparable harm with no adequate remedy at law, which cannot be entirely remedied by money damages.

119.   The public interest would be served by preliminary and permanent injunctive relief prohibiting Defendants from conducting unauthorized commercial ground transportation operations at TPA until such time as they comply with the requirements of the Regulations.

120.   The potential harm to Defendants from the issuance of preliminary and permanent injunctive relief is outweighed by the public interest and the Aviation Authority's duty to meet the objectives of Ch. 2012-234, Laws of Florida, the Rules and Regulations, the Commercial Ground Transportation Policy, and other State and Federal regulations through its enforcement of the Regulations.

121.   Wherefore, the Hillsborough County Aviation Authority demands judgment in its favor in which the Court grants it preliminary and permanent injunctive relief (a) enjoining Defendants and/or anyone acting or purporting to act on their behalf or in concert with them from entering upon Airport property to conduct unauthorized commercial ground transportation operations; and (b) enjoining Turo from offering, contracting with or charging anyone to rent any

24

car for delivery or pick-up at TPA on the Turo app or website until such time as Defendants comply with the provisions of the Regulations.

## COUNT II-TRESPASS AGAINST DEFENDANTS
### (Action for Injunctive Relief and Damages)

122.    The Aviation Authority reincorporates the allegations contained in paragraphs 1 through 114 as set forth more fully herein.

123.    Turo, by directing and acting in concert with its agents, the Turo Operators, has committed trespasses at the Airport by conducting unauthorized commercial ground transportation operations at the Airport, in violation of the Regulations.

124.    Defendants' trespasses by conducting unauthorized commercial ground transportation operations have damaged the Aviation Authority by thwarting both non-monetary and monetary objectives of the Regulations.

125.    Defendants' trespasses by conducting unauthorized commercial ground transportation operations at the Airport undermine the objectives of Ch. 2012-234, Laws of Florida, the Aviation Authority's Regulations, and other State and Federal regulations, and give rise to an irreparable harm with no adequate remedy at law, which cannot be solely remedied by money damages.

126.    The public interest would be served by preliminary and permanent injunctive relief prohibiting Defendants from conducting unauthorized commercial ground transportation operations without complying with the provisions of the Regulations.

25

127. The potential harm to Defendants from the issuance of preliminary and permanent injunctive relief is outweighed by the public interest and the Aviation Authority's duty to meet the objectives of the Regulations.

128. As a result of Defendants' violations of the Regulations while trespassing on the Airport, the Aviation Authority has suffered damages from the loss of revenue it would have otherwise received from the ground transportation services being provided by authorized rental car operators, as well as the non-monetary damages alleged herein.

129. For each Defendants' rental car and passenger ground transportation transactions, the Aviation Authority did not receive the Transportation Facility Charge of $2.00 per rental transaction day, Privilege Fees based on the applicable percentage of off-airport rental car operator's gross receipts, and the Per Trip Fees in the amount of $2.50 for the first year Turo operated at the Airport, $3.50 for the second year, and $4.50 for the third year.

130. As a result of Defendants' failure to comply with the requirements under the Aviation Authority's Regulations, the Aviation Authority lacks the information required to quantify all of the Defendants' violations of the Regulations to calculate the resulting damages.

131. Wherefore, the Hillsborough County Aviation Authority demands judgment in its favor and against Defendants in which the Court grants it preliminary and permanent injunctive relief and damages as follows: (a) enjoining Defendants and/or anyone else acting or purporting to act on their behalf or in concert with them from entering upon the Airport property to conduct unauthorized commercial ground transportation operations; (b) enjoining Turo from offering, contracting with or charging anyone to rent any car for delivery or pick-up at TPA on the Turo

26

app and website; and (c) awarding damages, costs, pre-judgment interest and any other and further relief as the Court deems just and equitable.

## COUNT III-CIVIL CONSPIRACY AGAINST DEFENDANTS
### (Action for Damages)

132.    The Aviation Authority reincorporates the allegations contained in paragraphs 1 through 114 as though set forth more fully herein.

133.    This is an action for civil conspiracy against Turo and the Turo Operators.

134.    Turo and the Turo Operators agreed with each other and acted in concert to enter Airport property to deliver, park and pick up rental cars and passengers at the Airport for compensation in violation of the Regulations and to conduct unauthorized commercial ground transportation operations.

135.    Defendants have been advised that their actions were violating the Aviation Authority's Regulations.

136.    The Defendants, in concert with another, engaged in the following overt acts.

137.    The Defendants conducted unauthorized commercial ground transportation operations at TPA for their pecuniary benefit and financial gain.

138.    Turo, through its agents, the Turo Operators, directed Airport passengers who used the Turo website or app to engage in rental car transactions on Airport property with the Turo Operators notwithstanding Turo's actual knowledge that such unauthorized commercial ground transportation operations were in violation of the Aviation Authority's Regulations.

139.    The Aviation Authority has been damaged as a result of the Defendants' actions.

27

140.    Wherefore, the Hillsborough County Aviation Authority demands judgment in its favor and against Defendants for damages, costs, pre-judgment interest and any other and further relief as is deemed just and equitable.

## COUNT IV-AIDING AND ABETTING TRESPASS AGAINST TURO
### (Action for Injunctive Relief and Damages)

141.    The Aviation Authority reincorporates the allegations contained in paragraphs 1 through 114 as though set forth more fully herein.

142.    This is an action for aiding and abetting a trespass against Turo.

143.    Turo, at all material times, was and is aware of the prohibitions against unauthorized commercial ground transportation operations at the Airport.

144.    Turo, at all material times, was and is aware the Regulations require that everyone that conducts commercial ground transportation operations at the Airport must comply with the Aviation Authority's Regulations.

145.    Turo, by creating and operating its Turo app and website, aided and abetted the Turo Operators in trespassing on Airport property to conduct unauthorized commercial ground transportation operations.

146.    Turo aided and abetted the trespass by the Turo Operators by facilitating the rental car transactions on Airport property with Airport passengers who used the Turo website or app to obtain rental cars at the Airport from Turo through the Turo Operators, notwithstanding Turo's actual knowledge that such rental car transactions were unauthorized commercial ground transportation operations that violated the Regulations.

28

147.    Turo benefitted financially from the violations of the Regulations and trespasses by the Turo Operators, which Turo aided and abetted by collecting the car rental fees generated by Defendants' unauthorized trespasses.

148.    As a result of Turo's actions, the Aviation Authority has suffered monetary and non-monetary damages.

149.    As a result of Turo's violations of the Regulations, while aiding and abetting the Turo Operators' trespasses at the Airport, the Aviation Authority has suffered damage from the loss of revenue it would have otherwise received from the commercial ground transportation services being provided by authorized commercial ground transportation operators.

150.    Turo's aiding and abetting the Turo Operators' unauthorized commercial ground transportation operations have also damaged the Aviation Authority by thwarting the non-monetary objectives of the Regulations.

151.    Turo's aiding and abetting the Turo Operators' continued trespasses by conducting unauthorized commercial ground transportation operations at the Airport undermines the objectives of the Regulations and gives rise to an irreparable harm with no adequate remedy at law, which cannot be solely remedied by money damages.

152.    The public interest would be served by preliminary and permanent injunctive relief prohibiting Turo from aiding and abetting the Turo Operators' continued unauthorized commercial ground transportation operations at the Airport without complying with the requirements of the Regulations.

29

153.    The potential harm to Turo from the issuance of preliminary and permanent injunctive relief is outweighed by the public interest and the Aviation Authority's duty to meet the objective of the Regulations.

154.    Wherefore, the Hillsborough Aviation Authority demands judgment in its favor and against Turo in which the Court grants preliminary and permanent injunctive relief and damages as follows: (a) enjoining Turo and/or anyone acting or purporting to act on its behalf or in concert with it from entering upon the Airport property to conduct unauthorized commercial ground transportation operations; (b) enjoining Turo from offering, contracting with or charging anyone to rent any car for delivery or pick-up at TPA on the Turo app and website; and (c) awarding damages, costs, pre-judgment interest and any other and further relief as the Court deems just and appropriate.

## COUNT V-UNJUST ENRICHMENT AGAINST TURO
### (Action for Damages)

155.    The Aviation Authority reincorporates the allegations contained in paragraphs 1 through 114 as though set forth more fully herein.

156.    This is an action for unjust enrichment against Turo.

157.    Turo has accepted, retained, and/or enjoyed the benefit of conducting unauthorized commercial ground transportation operations under circumstances that make it inequitable and unjust for the Turo to do so without paying the Aviation Authority for the value of such benefits.

158.    As a result of Turo's failure to obtain a contract or permit and comply with the Aviation Authority's Regulations, the Aviation Authority lacks the information required to

30

quantify all of Turo's unauthorized commercial ground transportation operations at the Airport in violation of the Regulations to calculate the resulting fair market value of the damages.

159.   Turo has failed to pay the Aviation Authority the Transportation Facility Charges, Pre-Trip Fees, and Privilege Fees, which establish the market value of the benefits that Turo has obtained but not paid for.

160.   For all Turo rental transactions that have occurred since Turo began operations at the Airport, the Aviation Authority did not receive the Transportation Facility Charge of $2.00 per rental transaction day, Privilege Fees based on the applicable percentage of off-airport rental car operator's gross receipts, and the Per Trip Fees in the amount of the $2.50 for the first year Turo operated at the Airport, $3.50 for the second year, and $4.50 for the third year, which are the reasonable market value of utilizing the Airport's property for commercial ground transportation activities.

161.   Wherefore, the Hillsborough County Aviation Authority demands judgment in its favor and against Turo for damages, costs, pre-judgment interest, and any other and further relief as is deemed just and equitable.

## COUNT VI-ACCOUNTING AGAINST DEFENDANTS

162.   The Aviation Authority reincorporates the allegations contained in paragraphs 1 through 114 as though set forth more fully herein.

163.   This is an action for an accounting with respect to the revenues earned by the Defendants and the additional fees that they owe the Aviation Authority with respect to the unauthorized commercial ground transportation operations conducted at the Airport.

164. As a result of the Defendants' violations of the Regulations while trespassing on Airport property, the Aviation Authority has suffered damages from the loss of revenue it would have otherwise received from the commercial ground transportation services provided by the Defendants.

165. Because the Defendants have failed to comply with the Regulations by engaging in commercial ground transportation operations without the required contract or permit from the Aviation Authority, the amount of damages are uncertain and the Aviation Authority is entitled to an accounting from Turo and the Turo Operators to determine the number of trips, the rental car revenue from Airport operations, the number of Turo vehicles that have trespassed on the Airport, and the ground transportation revenues owed to the Aviation Authority resulting therefrom.

Wherefore, the Hillsborough County Aviation Authority demands judgment in its favor and against the Defendants in which the Court orders an accounting from Turo identifying all Jane and John Doe Defendants who have violated the Regulations by engaging in unauthorized commercial ground transportation operations at TPA, listing their Airport pickups, drop-offs, and revenues to determine the appropriate fees that the Defendants should have paid the Hillsborough County Aviation Authority pursuant to the Regulations, and for any other and further relief as is deemed just and appropriate.

Dated this __13th__ day of __March__, 2019.

32

/s/ Keith A. Graham

Keith A. Graham
Florida Bar No. 0705314
Marchena and Graham, P.A.
976 Lake Baldwin Lane, Suite 101
Orlando, Florida 32814
Telephone No.: (407) 658-8566
Facsimile No.: (407) 281-8564

Attorney for Hillsborough County
Aviation Authority

33

## VERIFICATION

The undersigned, David Scott Knight, being over 18 years only and of sound mind, based on his personal knowledge obtained as the Aviation Authority's Assistant General Counsel, verifies that the preceding allegations are true and accurate.

By: David Scott Knight
Title: Assistant General Counsel
Hillsborough County Aviation Authority

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

    The foregoing instrument was acknowledged before me this 13th day of March, 2019 by David Scott Knight as Assistant General Cou. for, Hillsborough County Aviation Authority, who is personally known to me or who has produced _____N/A_____ as identification.

Printed Name: _____
Notary Public
My Commission Expires: _____

JANET M. WOOD
MY COMMISSION # GG 062255
EXPIRES: March 28, 2021
Bonded Thru Budget Notary Services

34

# EXHIBIT "A"



Tampa
International
Airport

Peter O. Knight Airport
Plant City Airport
Tampa Executive Airport

Hillsborough County
Aviation Authority
P.O. Box 22287
Tampa, Florida 33622
phone/ 813-870-8700
fax/ 813-875-6670
TampaAirport.com

April 28, 2017

VIA CERTIFIED 7016 7050 0000 5394 2669

Mr. Andre Haddad
Chief Executive Officer
Turo, Inc.
667 Mission Street
San Francisco, CA 94105

Dear Mr. Haddad:

It has been observed by staff of the Hillsborough County Aviation Authority (Authority), as well as other third parties, that Turo, Inc. (Turo) is operating at Tampa International Airport (Airport). Furthermore, a search of Turo's website (www.turo.com) shows that Turo makes specific reference to delivering rental vehicles to customers at the Airport curbsides (see attached screen shot).

The Authority has specific requirements for commercial vehicle operations. Currently, Turo does not have any permits or agreements with the Authority allowing for commercial vehicle operations at the Airport. All commercial vehicle operations by Turo or Turo representatives/drivers must comply with the Authority's requirements.

This letter serves as official notice that Turo and Turo representatives/drivers must immediately cease and desist operations at the Airport until such time as Turo reaches an agreement or acquires a permit from the Authority allowing commercial vehicle operations by Turo and Turo representatives/drivers. This also includes immediately removing all references regarding operations at the Airport from Turo's website.

Authority staff is available to meet with Turo and discuss the specific requirements needed to operate at the Airport. In the interim, attached is a copy of the Airport's Ground Transportation Operating Procedures (GTOPS) Manual which outlines the policies and procedures for commercial ground transportation operations at the Airport.

Joseph W. Lopano, Chief Executive Officer | Robert I. Watkins, Chairman | Gary W. Harrod, Vice Chairman | Commissioner Victor D. Crist, Secretary
Brig. General Chip Diehl, Treasurer | Mayor Bob Buckhorn, Assistant Secretary / Assistant Treasurer

If you have any questions, please call me at (813) 554-1447.

Sincerely,

Laurie Noyes
Vice President of Airport Concessions


cc:     Karl Martin, Senior Manager, Parking and Ground Transportation
        Chief Paul Sireci, Tampa International Airport Police Department
        David Scott Knight, Assistant General Counsel



Tampa International Airport, Tampa, FL, United States

May 2, 2017 10:00 AM - May 9, 2017 10:00 AM

# Curbside delivery

### NEVER WAIT AT THE RENTAL COUNTER AGAIN

93 cars available at Tampa International Airport



FREE DELIVERY

## CHRYSLER 200 2016

New listing

$ **29**
per day



Peter O. Knight Airport
Plant City Airport
Tampa Executive Airport

September 18, 2018                          VIA CERTIFIED 7018 0040 0000 0502 2843

Hillsborough County
Aviation Authority
P.O. Box 22287
Tampa, Florida 33622
phone/ 813-870-8700
fax/ 813-875-6670
TampaAirport.com

Ms. Michelle Fang
General Counsel
Turo, Inc.
667 Mission Street
4th Floor
San Francisco, CA 94105

Dear Ms. Fang:

On April 28, 2017, the Hillsborough County Aviation Authority (Authority) issued Turo, Inc. (Turo) official notice (see attached) that Turo and Turo representatives/drivers must immediately cease and desist operations at Tampa International Airport (Airport) until such time as Turo reaches an agreement or acquires a permit from the Authority allowing commercial vehicle operations by Turo and Turo representatives/drivers.

Despite several meetings last year and a recent procurement effort over the last several months, negotiations between the Authority and Turo have failed to result in an operating agreement with Turo at the Airport. Additionally, Turo has not received a permit from the Authority for commercial vehicle operations.

**This letter serves as a second official notice that Turo and Turo representatives/drivers must immediately cease and desist operations at the Airport. This includes immediately removing all references regarding the Airport and/or operations at the Airport from all of Turo's electronic platforms and websites.**

The Authority has specific requirements for commercial vehicle operations at the Airport, including the requirement to have a current operating agreement or permit. As of the date of this letter, should Authority staff observe Turo and/or Turo representatives/drivers illegally operating anywhere on Airport property, the Authority will take all available and necessary steps to enforce its Policies, Standard Procedures, Rules and Regulations, and Operating Directives relating to commercial vehicle operations and concessions at the Airport, including issuance of trespassing

Joseph W. Lopano, Chief Executive Officer | Robert I. Watkins, Chairman | Gary W. Harrod, Vice Chairman | Commissioner Victor D. Crist, Secretary
Brig. General Chip Diehl, Treasurer | Mayor Bob Buckhorn, Assistant Secretary / Assistant Treasurer

Page Two
September 18, 2018

warnings and citations.  The Authority also reserves the right to exercise all remedies available to it at law or in equity.

Authority staff is available to meet should Turo wish to resume discussions regarding operating at the Airport.

If you have any questions, please call me at (813) 801-6055.

Sincerely,

David Scott Knight
Assistant General Counsel

cc:     Michael Stephens, General Counsel
        John Tiliacos, Executive Vice President, Operations and Customer Service
        Laurie Noyes, Vice President, Airport Concessions
        Charlie Vazquez, Chief, Tampa International Airport Police Department
        Lloyd Tillmann, Director of Operations
        Gina Evans, Director of Governmental Relations, Communications
        Joel Feldman, C.M., Senior Manager, Airport Concessions
        Karl Martin, Senior Manager, Parking and Ground Transportation



Peter O. Knight Airport
Plant City Airport
Tampa Executive Airport

January 9, 2019

Hillsborough County
Aviation Authority
P.O. Box 22287
Tampa, Florida 33622
phone/ 813-870-8700
fax/ 813-875-6670
TampaAirport.com

Andre Haddad
**Chief Executive Officer**
**Turo Inc.**
116 New Montgomery Street, Suite 700
San Francisco, CA 94105

Dear Mr. Haddad,

The Hillsborough County Aviation Authority ("Authority") has received reports and determined that your company, Turo Inc. ("Turo"), has been conducting business operations through its app based platform and agents at Tampa International Airport ("Airport"), in violation of Policy P310, Commercial Ground Transportation, which requires a use and permit agreement to perform such business at Tampa International Airport. As you have been previously advised on multiple occasions, both verbally and in writing, including two previous cease and desist orders from the Authority, similar to all other ground transportation operators at the Airport, Turo and its agents are not authorized to conduct business on Airport property without first entering into a use and permit agreement with the Authority, including providing vehicles for compensation. Should operations continue at the Airport without proper authorization, the Authority will pursue any and all remedies available to it at law and in equity.

Pursuant to this letter, Turo and the owner of the vehicle set out below must immediately cease and desist all business operations at the Airport.

To obtain a use and permit agreement, please contact the Authority's Concessions Department at (813) 554-1418.

**The subject event and vehicle details are as follows:**
Date & Time: <u>December 4, 2018 at 5:00 p.m.</u>
Location: <u>Short Term Parking – roof level</u>
Vehicle Make & Model: <u>Ford Mustang 2018</u>
Vehicle License Plate & State: <u>(FL) HCTN99</u>
Name of vehicle operator/Turo agent: <u>Automix (Derek Norman Jettmar)</u>

Regards,

John Tiliacos
Executive Vice President of Operations and Customer Service

cc:   Michelle Fang, Chief Legal Officer, Turo Inc.
      Michael Stephens, General Counsel

Joseph W. Lopano, Chief Executive Officer | Robert I. Watkins, Chairman | Gary W. Harrod, Vice Chairman
Commissioner Lesley "Les" Miller, Jr., Secretary | Brig. General Chip Diehl, Treasurer | Mayor Bob Buckhorn, Asst. Secretary / Asst. Treasurer



Tampa
International
Airport

Peter O. Knight Airport
Plant City Airport
Tampa Executive Airport

Hillsborough County
Aviation Authority
P.O. Box 22287
Tampa, Florida 33622
phone/ 813-870-8700
fax/ 813-875-6670
TampaAirport.com

January 9, 2019

Andre Haddad
**Chief Executive Officer**
**Turo Inc.**
**116 New Montgomery Street, Suite 700**
**San Francisco, CA 94105**

Dear Mr. Haddad,

The Hillsborough County Aviation Authority ("Authority") has received reports and determined that your company, Turo Inc. ("Turo"), has been conducting business operations through its app based platform and agents at Tampa International Airport ("Airport"), in violation of Policy P310, Commercial Ground Transportation, which requires a use and permit agreement to perform such business at Tampa International Airport. As you have been previously advised on multiple occasions, both verbally and in writing, including two previous cease and desist orders from the Authority, similar to all other ground transportation operators at the Airport, Turo and its agents are not authorized to conduct business on Airport property without first entering into a use and permit agreement with the Authority, including providing vehicles for compensation. Should operations continue at the Airport without proper authorization, the Authority will pursue any and all remedies available to it at law and in equity.

Pursuant to this letter, Turo and the owner of the vehicle set out below must immediately cease and desist all business operations at the Airport.

To obtain a use and permit agreement, please contact the Authority's Concessions Department at (813) 554-1418.

**The subject event and vehicle details are as follows:**
Date & Time: <u>December 5, 2018 at 1:00 p.m.</u>
Location: <u>Economy Parking Garage; Level 4, Orange, Aisle 11</u>
Vehicle Make & Model: <u>Mercedes Benz Metris van 2016</u>
Vehicle License Plate & State: <u>(FL) JYNE30</u>
Name of vehicle operator/Turo agent: <u>Dane Phillip Lawrence (aka Gourmet Everything)</u>

Regards,

John Tiliacos
**Executive Vice President of Operations and Customer Service**

cc:      Michelle Fang, Chief Legal Officer, Turo Inc.
          Michael Stephens, General Counsel

Joseph W. Lopano, Chief Executive Officer | Robert I. Watkins, Chairman | Gary W. Harrod, Vice Chairman
Commissioner Lesley "Les" Miller, Jr., Secretary | Brig. General Chip Diehl, Treasurer | Mayor Bob Buckhorn, Asst. Secretary / Asst. Treasurer



Peter O. Knight Airport
Plant City Airport
Tampa Executive Airport

January 9, 2019

Hillsborough County
Aviation Authority
P.O. Box 22287
Tampa, Florida 33622
phone/ 813-870-8700
fax/ 813-875-6670
TampaAirport.com

Andre Haddad
**Chief Executive Officer**
**Turo Inc.**
116 New Montgomery Street, Suite 700
San Francisco, CA 94105

Dear Mr. Haddad,

The Hillsborough County Aviation Authority ("Authority") has received reports and determined that your company, Turo Inc. ("Turo"), has been conducting business operations through its app based platform and agents at Tampa International Airport ("Airport"), in violation of Policy P310, Commercial Ground Transportation, which requires a use and permit agreement to perform such business at Tampa International Airport. As you have been previously advised on multiple occasions, both verbally and in writing, including two previous cease and desist orders from the Authority, similar to all other ground transportation operators at the Airport, Turo and its agents are not authorized to conduct business on Airport property without first entering into a use and permit agreement with the Authority, including providing vehicles for compensation. Should operations continue at the Airport without proper authorization, the Authority will pursue any and all remedies available to it at law and in equity.

Pursuant to this letter, Turo and the owner of the vehicle set out below must immediately cease and desist all business operations at the Airport.

To obtain a use and permit agreement, please contact the Authority's Concessions Department at (813) 554-1418.

**The subject event and vehicle details are as follows:**
Date & Time: <u>December 3, 2018 at 3:00 p.m.</u>
Location: <u>Economy Parking Garage; Level 4, Orange, Aisle 11</u>
Vehicle Make & Model: <u>Hyundai Elantra 2018</u>
Vehicle License Plate & State: <u>(FL) KQQP47</u>
Name of vehicle operator/Turo agent: <u>Byron Anthony Johnson</u>

Regards,

John Tiliacos
**Executive Vice President of Operations and Customer Service**

cc:     Michelle Fang, Chief Legal Officer, Turo Inc.
        Michael Stephens, General Counsel

Joseph W. Lopano, Chief Executive Officer | Robert I. Watkins, Chairman | Gary W. Harrod, Vice Chairman
Commissioner Lesley "Les" Miller, Jr., Secretary | Brig. General Chip Diehl, Treasurer | Mayor Bob Buckhorn, Asst. Secretary / Asst. Treasurer



Tampa
International
Airport

Peter O. Knight Airport
Plant City Airport
Tampa Executive Airport

Hillsborough County
Aviation Authority
P.O. Box 22287
Tampa, Florida 33622
phone/ 813-870-8700
fax/ 813-875-6670
TampaAirport.com

January 9, 2019

Andre Haddad
**Chief Executive Officer**
**Turo Inc.**
116 New Montgomery Street, Suite 700
San Francisco, CA 94105

Dear Mr. Haddad,

The Hillsborough County Aviation Authority ("Authority") has received reports and determined that your company, Turo Inc. ("Turo"), has been conducting business operations through its app based platform and agents at Tampa International Airport ("Airport"), in violation of Policy P310, Commercial Ground Transportation, which requires a use and permit agreement to perform such business at Tampa International Airport.  As you have been previously advised on multiple occasions, both verbally and in writing, including two previous cease and desist orders from the Authority, similar to all other ground transportation operators at the Airport, Turo and its agents are not authorized to conduct business on Airport property without first entering into a use and permit agreement with the Authority, including providing vehicles for compensation.  Should operations continue at the Airport without proper authorization, the Authority will pursue any and all remedies available to it at law and in equity.

Pursuant to this letter, Turo and the owner of the vehicle set out below must immediately cease and desist all business operations at the Airport.

To obtain a use and permit agreement, please contact the Authority's Concessions Department at (813) 554-1418.

**The subject event and vehicle details are as follows:**
Date & Time: <u>December 5, 2018 at 3:00 p.m.</u>
Location: <u>Economy Parking Garage; Level 4, Orange, Aisle 11</u>
Vehicle Make & Model: <u>Ford Fusion 2016</u>
Vehicle License Plate & State: <u>(FL) HSVS63</u>
Name of vehicle operator/Turo agent: <u>Eriselda Marku</u>

Regards,

John Tiliacos
Executive Vice President of Operations and Customer Service

cc:    Michelle Fang, Chief Legal Officer, Turo Inc.
       Michael Stephens, General Counsel

Joseph W. Lopano, Chief Executive Officer | Robert I. Watkins, Chairman | Gary W. Harrod, Vice Chairman
Commissioner Lesley "Les" Miller, Jr., Secretary | Brig. General Chip Diehl, Treasurer | Mayor Bob Buckhorn, Asst. Secretary / Asst. Treasurer



Tampa
International
Airport

Peter O. Knight Airport
Plant City Airport
Tampa Executive Airport

Hillsborough County
Aviation Authority
P.O. Box 22287
Tampa, Florida 33622
phone/ 813-870-8700
fax/ 813-875-6670
TampaAirport.com

January 9, 2019

Andre Haddad
**Chief Executive Officer**
**Turo Inc.**
116 New Montgomery Street, Suite 700
San Francisco, CA 94105

Dear Mr. Haddad,

The Hillsborough County Aviation Authority ("Authority") has received reports and determined that your company, Turo Inc. ("Turo"), has been conducting business operations through its app based platform and agents at Tampa International Airport ("Airport"), in violation of Policy P310, Commercial Ground Transportation, which requires a use and permit agreement to perform such business at Tampa International Airport. As you have been previously advised on multiple occasions, both verbally and in writing, including two previous cease and desist orders from the Authority, similar to all other ground transportation operators at the Airport, Turo and its agents are not authorized to conduct business on Airport property without first entering into a use and permit agreement with the Authority, including providing vehicles for compensation. Should operations continue at the Airport without proper authorization, the Authority will pursue any and all remedies available to it at law and in equity.

Pursuant to this letter, Turo and the owner of the vehicle set out below must immediately cease and desist all business operations at the Airport.

To obtain a use and permit agreement, please contact the Authority's Concessions Department at (813) 554-1418.

**The subject event and vehicle details are as follows:**
Date & Time: <u>December 4, 2018 at 1:00 p.m.</u>
Location: <u>Economy Parking Garage; Level 2, Orange, Aisle 12</u>
Vehicle Make & Model: <u>Ford Mustang 2016</u>
Vehicle License Plate & State: <u>(FL) ITMV83</u>
Name of vehicle operator/Turo agent: <u>Chad Darius McClellan</u>

Regards,

John Tiliacos
Executive Vice President of Operations and Customer Service

cc:      Michelle Fang, Chief Legal Officer, Turo Inc.
         Michael Stephens, General Counsel

Joseph W. Lopano, Chief Executive Officer | Robert I. Watkins, Chairman | Gary W. Harrod, Vice Chairman
Commissioner Lesley "Les" Miller, Jr., Secretary | Brig. General Chip Diehl, Treasurer | Mayor Bob Buckhorn, Asst. Secretary / Asst. Treasurer



Peter O. Knight Airport
Plant City Airport
Tampa Executive Airport

Hillsborough County
Aviation Authority
P.O. Box 22287
Tampa, Florida 33622
phone/ 813-870-8700
fax/ 813-875-6670
TampaAirport.com

January 9, 2019

Andre Haddad
**Chief Executive Officer**
**Turo Inc.**
**116 New Montgomery Street, Suite 700**
**San Francisco, CA 94105**

Dear Mr. Haddad,

The Hillsborough County Aviation Authority ("Authority") has received reports and determined that your company, Turo Inc. ("Turo"), has been conducting business operations through its app based platform and agents at Tampa International Airport ("Airport"), in violation of Policy P310, Commercial Ground Transportation, which requires a use and permit agreement to perform such business at Tampa International Airport. As you have been previously advised on multiple occasions, both verbally and in writing, including two previous cease and desist orders from the Authority, similar to all other ground transportation operators at the Airport, Turo and its agents are not authorized to conduct business on Airport property without first entering into a use and permit agreement with the Authority, including providing vehicles for compensation. Should operations continue at the Airport without proper authorization, the Authority will pursue any and all remedies available to it at law and in equity.

Pursuant to this letter, Turo and the owner of the vehicle set out below must immediately cease and desist all business operations at the Airport.

To obtain a use and permit agreement, please contact the Authority's Concessions Department at (813) 554-1418.

**The subject event and vehicle details are as follows:**
Date & Time: <u>December 5, 2018 at 5:00 p.m.</u>
Location: <u>Economy Parking Garage; Level 5, Gold Section, Aisle 6</u>
Vehicle Make & Model: <u>Ford Mustang 2017</u>
Vehicle License Plate & State: <u>(FL) 6TXU</u>
Name of vehicle operator/Turo agent: <u>Hunter D. McGaughey</u>

Regards,

John Tiliacos
**Executive Vice President of Operations and Customer Service**

cc:     Michelle Fang, Chief Legal Officer, Turo Inc.
        Michael Stephens, General Counsel

Joseph W. Lopano, Chief Executive Officer | Robert I. Watkins, Chairman | Gary W. Harrod, Vice Chairman
Commissioner Lesley "Les" Miller, Jr., Secretary | Brig. General Chip Diehl, Treasurer | Mayor Bob Buckhorn, Asst. Secretary / Asst. Treasurer



Peter O. Knight Airport
Plant City Airport
Tampa Executive Airport

Hillsborough County
Aviation Authority
P.O. Box 22287
Tampa, Florida 33622
phone/ 813-870-8700
fax/ 813-875-6670
TampaAirport.com

January 9, 2019

Andre Haddad
**Chief Executive Officer**
**Turo Inc.**
**116 New Montgomery Street, Suite 700**
**San Francisco, CA 94105**

Dear Mr. Haddad,

The Hillsborough County Aviation Authority ("Authority") has received reports and determined that your company, Turo Inc. ("Turo"), has been conducting business operations through its app based platform and agents at Tampa International Airport ("Airport"), in violation of Policy P310, Commercial Ground Transportation, which requires a use and permit agreement to perform such business at Tampa International Airport. As you have been previously advised on multiple occasions, both verbally and in writing, including two previous cease and desist orders from the Authority, similar to all other ground transportation operators at the Airport, Turo and its agents are not authorized to conduct business on Airport property without first entering into a use and permit agreement with the Authority, including providing vehicles for compensation. Should operations continue at the Airport without proper authorization, the Authority will pursue any and all remedies available to it at law and in equity.

Pursuant to this letter, Turo and the owner of the vehicle set out below must immediately cease and desist all business operations at the Airport.

To obtain a use and permit agreement, please contact the Authority's Concessions Department at (813) 554-1418.

**The subject event and vehicle details are as follows:**
Date & Time: <u>December 4, 2018 at 3:00 p.m.</u>
Location: <u>Economy Parking Garage; Level 4, Orange, Aisle 11</u>
Vehicle Make & Model: <u>Toyota C-HR 2018</u>
Vehicle License Plate & State: <u>(FL) JTCK97</u>
Name of vehicle operator/Turo agent: <u>Marlon Edward Soley</u>

Regards,

John Tiliacos
**Executive Vice President of Operations and Customer Service**

cc:    Michelle Fang, Chief Legal Officer, Turo Inc.
       Michael Stephens, General Counsel

Joseph W. Lopano, Chief Executive Officer | Robert I. Watkins, Chairman | Gary W. Harrod, Vice Chairman
Commissioner Lesley "Les" Miller, Jr., Secretary | Brig. General Chip Diehl, Treasurer | Mayor Bob Buckhorn, Asst. Secretary / Asst. Treasurer



Peter O. Knight Airport
Plant City Airport
Tampa Executive Airport

Hillsborough County
Aviation Authority
P.O. Box 22287
Tampa, Florida 33622
phone/ 813-870-8700
fax/ 813-875-6670
TampaAirport.com

January 9, 2019

Andre Haddad
**Chief Executive Officer**
Turo Inc.
116 New Montgomery Street, Suite 700
San Francisco, CA 94105

Dear Mr. Haddad,

The Hillsborough County Aviation Authority ("Authority") has received reports and determined that your company, Turo Inc. ("Turo"), has been conducting business operations through its app based platform and agents at Tampa International Airport ("Airport"), in violation of Policy P310, Commercial Ground Transportation, which requires a use and permit agreement to perform such business at Tampa International Airport.  As you have been previously advised on multiple occasions, both verbally and in writing, including two previous cease and desist orders from the Authority, similar to all other ground transportation operators at the Airport, Turo and its agents are not authorized to conduct business on Airport property without first entering into a use and permit agreement with the Authority, including providing vehicles for compensation.  Should operations continue at the Airport without proper authorization, the Authority will pursue any and all remedies available to it at law and in equity.

Pursuant to this letter, Turo and the owner of the vehicle set out below must immediately cease and desist all business operations at the Airport.

To obtain a use and permit agreement, please contact the Authority's Concessions Department at (813) 554-1418.

**The subject event and vehicle details are as follows:**
Date & Time: <u>December 3, 2018 at 4:30 p.m.</u>
Location: <u>Curbside Arrivals by Spirit</u>
Vehicle Make & Model: <u>Infiniti QX70 2017</u>
Vehicle License Plate & State: <u>(FL) 511YZU</u>
Name of vehicle operator/Turo agent: <u>Brian Christopher Zickafoose</u>

Regards,

John Tiliacos
**Executive Vice President of Operations and Customer Service**

cc:     Michelle Fang, Chief Legal Officer, Turo Inc.
        Michael Stephens, General Counsel

Joseph W. Lopano, Chief Executive Officer | Robert I. Watkins, Chairman | Gary W. Harrod, Vice Chairman
Commissioner Lesley "Les" Miller, Jr., Secretary | Brig. General Chip Diehl, Treasurer | Mayor Bob Buckhorn, Asst. Secretary / Asst. Treasurer

# EXHIBIT B

Filing # 86340668 E-Filed 03/13/2019 03:43:21 PM

**FORM 1.997. CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner for the use of the Clerk of Court for the purpose of reporting judicial workload data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

I.      **CASE STYLE**

IN THE CIRCUIT COURT OF THE <u>THIRTEENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>HILLSBOROUGH</u>   COUNTY, FLORIDA

Case No.:_____
Judge: _____

<u>Hillsborough County Aviation Authority</u>
Plaintiff
        vs.
<u>Turo Inc.</u>
Defendant

II.     **TYPE OF CASE**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence – other
    ☐   Business governance
    ☐   Business torts
    ☐   Environmental/Toxic tort
    ☐   Third party indemnification
    ☐   Construction defect
    ☐   Mass tort
    ☐   Negligent security
    ☐   Nursing home negligence
    ☐   Premises liability – commercial
    ☐   Premises liability -- residential
☐ Products liability
☒ Real Property/Mortgage foreclosure
    ☐   Commercial foreclosure $0 - $50,000
    ☐   Commercial foreclosure $50,001 - $249,999
    ☐   Commercial foreclosure $250,000 or more
    ☐   Homestead residential foreclosure $0 – 50,000
    ☐   Homestead residential foreclosure $50,001 - $249,999
    ☐   Homestead residential foreclosure $250,000 or more
    ☐   Non-homestead residential foreclosure $0 - $50,000
    ☐   Non-homestead residential foreclosure $50,001 - $249,999

☐   Non-homestead residential foreclosure $250,00 or more
☒   Other real property actions $0 - $50,000
☐   Other real property actions $50,001 - $249,999
☐   Other real property actions $250,000 or more

☐   Professional malpractice
    ☐   Malpractice – business
    ☐   Malpractice – medical
    ☐   Malpractice – other professional
☐   Other
    ☐   Antitrust/Trade Regulation
    ☐   Business Transaction
    ☐   Circuit Civil - Not Applicable
    ☐   Constitutional challenge-statute or ordinance
    ☐   Constitutional challenge-proposed amendment
    ☐   Corporate Trusts
    ☐   Discrimination-employment or other
    ☐   Insurance claims
    ☐   Intellectual property
    ☐   Libel/Slander
    ☐   Shareholder derivative action
    ☐   Securities litigation
    ☐   Trade secrets
    ☐   Trust litigation

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

III.  **REMEDIES SOUGHT** (check all that apply):
        ☒  Monetary;
        ☒  Non-monetary declaratory or injunctive relief;
        ☐  Punitive

IV.  **NUMBER OF CAUSES OF ACTION: (   )**
(Specify)

    <u>6</u>

V.  **IS THIS CASE A CLASS ACTION LAWSUIT?**
        ☐  Yes
        ☒  No

VI.  **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
        ☒  No
        ☐  Yes – If "yes" list all related cases by name, case number and court:

VII.  **IS JURY TRIAL DEMANDED IN COMPLAINT?**
        ☐  Yes
        ☒  No

---

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature <u>s/ Keith A Graham</u>   FL Bar No.: <u>705314</u>
      Attorney or party                       (Bar number, if attorney)

    <u>Keith A Graham</u>   <u>03/13/2019</u>
      (Type or print name)                    Date

# EXHIBIT C

Filing # 86340668 E-Filed 03/13/2019 03:43:21 PM

## IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL
## CIRCUIT OF THE STATE OF FLORIDA, IN AND FOR HILLSBOROUGH COUNTY
## CIRCUIT CIVIL DIVISION

Hillsborough County Aviation Authority

Plaintiff(s)

CASE NO.:_____

VS.

DIVISION:_____

Turo Inc and multiple Jane & John Doe

Defendant(s)

### REQUEST FOR ISSUANCE OF SUMMONS –CIRCUIT CIVIL

This is a request for issuance of service of process by the Clerk of court as follows:

### *PLEASE NOTE THAT A SEPARATE REQUEST
### IS REQUIRED FOR EACH PARTY TO BE SERVED*

| **Type of Process: (choose one)** |
|---|
| ☑ Initial Summons   ☐ Alias Summons   ☐ Pluries Summons |
| **Type of Summons: (choose one)** |
| Circuit Court Summons:<br><br>Indicate days to respond   ☑ 20  ☐ 30  ☐ 45  ☐ 60     ☐ Other____<br><br>Non-Residential Eviction:  ☐ Mailing   ☐ No Mailing<br><br>Residential Eviction -   ☐ 5 day only   ☐ 5 day with 20 day attached<br><br>☐ Mailing   ☐ No Mailing |
| **Party information:** |
| Party To Be Served:<br><br>Name: Turo Inc<br><br>Address: 116 New Montgomery Street, Suite 700<br><br>City/State/Zip: San Francisco CA 94105 |
| Email Address to Return Issued Summons: kgraham@mgfirm.com |

# EXHIBIT D

Filing # 86340668 E-Filed 03/13/2019 03:43:21 PM

## IN THE THIRTEENTH JUDICIAL CIRCUIT OF THE
## STATE OF FLORIDA, IN AND FOR HILLSBOROUGH COUNTY

Hillsborough County Aviation Authority,

a Florida Independent Special District

Plaintiff/Petitioner(s)

CASE NO.: _____

DIVISION: _____

vs.

Turo Inc., a Delaware Corporation,

and multiple uknown JANE and JOHN DOE

Defendant/Respondent(s)

## REQUEST FOR DIVISION ASSIGNMENT

**This is a request based on local Administrative Order(s) for the Clerk of the Court to assign the above styled case in the:**

[✔] **Tampa Division**

[ ] **East Division**

[ ] **Prior Division (Please indicate Case Number and Division of previously filed action: _____ )**

I understand that the actual division assignment will be in accordance with the <u>Hillsborough County Administrative Orders</u>. If there is no supported request for specific division assignment, this action will be assigned a division based on a random and equitable distribution system.

Name of Attorney: Keith A. Graham, Esq.

Address: Marchena & Graham, P.A., 976 Lake

Baldwin Lane, Suite 101, Orlando, FL 32814

Phone Number: 407-658-8566

Email Address(es): kgraham@mgflrm.com; mcatalano@mgflrm.com

# EXHIBIT E

Filing # 86340668 E-Filed 03/13/2019 03:43:21 PM

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT OF FLORIDA
IN AND FOR HILLSBOROUGH COUNTY
CIVIL DIVISION

### VALUE OF REAL PROPERTY OR MORTGAGE FORECLOSURE CLAIM

The form below has been designed to assist with the calculation requirements of s. 28.241 (1) (a) 2, regarding mortgage foreclosure graduated filing fees, based on the estimated value of the claim and includes the required fees for mediation, education and additional defendants.  (See chart below)

Date: March 13, 2019 _____       Case Number: _____

                                     Division: _____

Plaintiff (s):
Hillsborough County Aviation Authority
a Florida Independent Special District
vs.

Defendant (s):
Turo Inc., a Delaware Corporation,
and multiple uknown JANE and JOHN DOE

1. $ 0.00 _____ Principal due on the note

2. $ 0.00 _____ Interested owed on the note

3. $ 0.00 _____ Total advances owed on the note including

   $ 0.00 _____ Property Taxes
   $ 0.00 _____ Insurance
   $ 0.00 _____ Other advances
   (The total of these three categories provides the amount for line 3.)

4. $0.00 _____ Value of Tax Certificates relating to mortgage

5. $0.00 _____ **TOTAL ESTIMATED VALUE OF CLAIM**
   (Add lines 1-4 to get the total for line 5)

Submitter: Keith A. Graham, Esq., Attorney for Plaintiff, Hillsborough County Aviation Authority
_____

(Please Print) Name, Title and Company

**GRADUATED FILING FEES BASED ON THE VALUE OF THE CLAIM**

| | |
|---|---|
| $400 | Value less than or equal to $50,000 with 5 defendants or less |
| $905 | Value greater than $50,000 but less than $250,000 with 5 defendants or less |
| $1,905 | Value $250,000 or greater with 5 defendants or less |
| $2.50 | Additional fee for each  defendant over 5 |

# EXHIBIT F

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT,
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION

**Hillsborough County Aviation Authority,**
**a Florida independent special district**                     Case No.: **19-CA-002677**
Plaintiff(s)
vs
**Turo Inc., a Delaware Corporation, and**
**multiple unknown JANE and JOHN DOE**                     Division C
Defendant(s)

**SUMMONS**

**THE STATE OF FLORIDA**:
To Each Sheriff of the State:
         **YOU ARE COMMANDED** to serve this summons and a copy of the complaint or petition in this action on defendant(s)

**Turo Inc.**

**116 New Montgomery Street**
**Suite 700**
**San Francisco CA  94105**

         Each defendant is required to serve written defenses to the complaint or petition on KEITH ALLEN GRAHAM, plaintiff's attorney, whose address is **976 LAKE BALDWIN LN STE 101   ORLANDO FL  32814** within 20[1] days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

**DATED** on March 15, 2019.
Attorney: KEITH ALLEN GRAHAM                     **PAT FRANK**
Attorney For: Hillsborough County Aviation          As Clerk of the Court
Authority
Address: 976 LAKE BALDWIN LN STE 101
ORLANDO FL  32814

Florida Bar No: 705314
                                        Dana Caranante
                                        Dana Caranante, Deputy Clerk
                                        Prepared By: Lori Guidoboni, Deputy Clerk
                                        P.O. Box 3360          800 E Twiggs St
                                        Tampa, FL 33601        Room 101
                                                              Tampa FL 33602
                                        (813)276-8100

[1] Except when suit is brought pursuant to section 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to be inserted as to it is 40 days. When suit is brought pursuant to section 768.28, Florida Statutes, the time to be inserted is 30 days.

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Hillsborough County Courthouse, 800 E. Twiggs St., Room 604, Tampa, Florida 33602, (813) 272-7040, at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

Florida Rules of Civil Procedure Form 1.902(a), Summons (06/10)

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named in the documents.

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

## IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

# EXHIBIT G

Filing # 86892789 E-Filed 03/25/2019 12:34:34 PM

IN THE CIRCUIT COURT OF THE
THIRTEENTH JUDICIAL CIRCUIT,
IN AND FOR HILLSBOROUGH
COUNTY, FLORIDA

HILLSBOROUGH COUNTY
AVIATION AUTHORITY, a Florida
independent special district,

CASE NO. 2019-CA-002677
DIV. C

      Plaintiff,

v.

TURO INC., a Delaware corporation, and
multiple unknown JANE and JOHN
DOE,

      Defendants.

_____

## PLAINTIFF, THE HILLSBOROUGH COUNTY AVIATION AUTHORITY'S VERIFIED MOTION FOR TEMPORARY INJUNCTION

Plaintiff, the HILLSBOROUGH COUNTY AVIATION AUTHORITY (the "Aviation Authority"), through its undersigned attorneys, pursuant to Rule 1.610 of the Florida Rules of Civil Procedure, moves for entry of a temporary injunction against the Defendants, TURO INC. ("Turo"), a Delaware corporation, and multiple unknown JANE and JOHN DOE (collectively the "Turo Operators").

Specifically, the Aviation Authority seeks a temporary injunction in which the Court (a) enjoins Turo and/or anyone acting or purporting to act on its behalf or in

1

concert with it from entering the property of the Tampa International Airport to conduct any commercial ground transportation operations until such time as Turo complies with the provisions of the Regulations at issue; and (b) enjoins the Turo Operators and/or anyone acting or purporting to act on their behalf or in concert with them from entering the property of the Tampa International Airport to conduct any commercial ground transportation activities until such time as the Turo Operators comply with the provisions of the Regulations at issue.

## I.      FACTUAL BASIS FOR THE TEMPORARY INJUNCTION.

1.      The Aviation Authority brought a six count Verified Complaint against Turo and the Turo Operators for injunctive relief and damages arising from Turo and the Turo Operators' trespasses upon the property of the Tampa International Airport to conduct unauthorized commercial ground transportation operations in violation of the Aviation Authority's Rules and Regulations No. R340 for Tampa International Airport (2017) (the "Rules and Regulations"), Aviation Authority Policy P310: Commercial Ground Transportation (the "Commercial Ground Transportation Policy"), and Aviation Authority Policy P822: Off-Airport Rental Car Companies (the "Off-Airport Rental Car Policy") (collectively referred to herein as the "Regulations"), as amended from time to time.

2

2. The six claims raised by the Verified Complaint are (1) Violation of the Regulations Against Defendants; (2) Trespass Against Defendants; (3) Civil Conspiracy Against Defendants; (4) Aiding and Abetting Trespass Against Turo; (5) Unjust Enrichment Against Turo; and (6) Accounting Against Defendants.

3. Turo operates a web-based rental car enterprise that collects car rental and related fees from Florida car rental customers, for cars owned by Turo agents, including the Jane and John Doe Co-Defendants, which Turo rents through Turo's app and website to car rental customers who are identified, solicited and charged by Turo.

4. Turo and the Turo Operators have conducted commercial rental car services at the Tampa International Airport to passengers in contravention of the Regulations promulgated by the Aviation Authority.

5. The factual allegations contained in this Motion are verified by the declaration of David Scott Knight, the Assistant General Counsel of the Aviation Authority. The Verified Complaint is also incorporated by reference into this Motion.

A.  **Overview of the Aviation Authority and the Regulations.**

6. The Aviation Authority is an independent special district validly existing under Chapter 2012-234, Laws of Florida, as amended (the "Act"), which grants the Aviation Authority the exclusive jurisdiction, control, supervision and

3

management over all public airports in Hillsborough County, Florida (the "County"), including the Tampa International Airport.

7.     The Aviation Authority operates the Tampa International Airport (hereinafter referred to interchangeably as the "Airport" or "TPA") in Tampa, Hillsborough County, Florida, pursuant to authority delegated to it by the State of Florida.

8.     Pursuant to the Act, the Aviation Authority "shall manage airport facilities and grant airport concessions to further the development of commerce and tourism in or affecting the Tampa Bay area and the [s]tate." *See* 2012 Fla. Laws 234.

9.     In managing its facilities and granting concessions for services to the public, the Aviation Authority shall promote the development of commerce and tourism by, among other things, "[l]imiting or prohibiting business competition which is destructive to the ends of promoting commerce and tourism in the state." *Id.*

10.     In addition, the State granted the Aviation Authority the power, pursuant to Section 6 of the Act, to "[a]dopt and amend rules, regulations, and policies reasonably necessary for the implementation of this act" to "[f]ix, alter, charge, establish, and collect rates, fees, rentals and other charges...for the services of [Aviation] Authority facilities at reasonable and uniform rates," and to "fix and enforce penalties for the

4

violation of the Act or a rule, regulation, or policy adopted in accordance with the Act."
*See* 2012 Fla. Laws 234.

11.    The Aviation Authority is also the Airport sponsor, as a recipient of financial funding for airport development from the Federal Aviation Administration (the "FAA") under the Airport Improvement Program, authorized by the Airport and Airway Improvement Act of 1982, as amended, 49 U.S.C. § 47101 (2012), *et seq*.

12.    As a recipient of federal funding, the Aviation Authority is obligated to comply with its federal grant assurances and related Federal law, pursuant to 49 U.S.C. § 47107.

13.    TPA is an international airport that is, based on passenger traffic, the 4th busiest airport in the State, the 29th busiest airport in the United States, and the 111th busiest airport in the world.

### 1.    The Aviation Authority's Regulations.

14.    Pursuant to the authority granted by the State and to comply with its federal grant obligations, the Aviation Authority adopted the Regulations, as set forth herein, to provide the framework for permissible commercial rental car activities that apply to the Defendants' unauthorized commercial ground transportation operations at the Airport.

5

15.     The purpose of the Aviation Authority's regulation of commercial ground transportation services is to ensure acceptable standards of service to the public; avoid congestion of Airport roadways, curbsides and parking areas; ensure appropriate revenue is received by the Authority from those providing commercial ground transportation services at the Airport to offset the Aviation Authority's costs of operating and maintaining the facility; and ensure compliance with the operating procedures for ground transportation and other applicable Airport Rules and Regulations. *See* Commercial Ground Transportation Policy, at 1.

### 2.      The Requirements of the Regulations.

16.     Given the number of individuals who use TPA's roadways and facilities, the Aviation Authority must strictly regulate traffic, parking and business operations on its property to ensure public safety and convenience, to enhance efficiency and productivity at TPA, and to comply with its federal grant obligations.

17.     For this reason, the Aviation Authority, through its Regulations, imposes restrictions on individuals and entities that bring vehicles onto Airport property for commercial purposes, including requiring that such individuals and entities obtain a contract or permit, pay fees, and comply with designated traffic routes and parking requirements, which have all been violated by the Defendants.

6

18.   The Aviation Authority monitors and enforces these restrictions through its contract terms and permit requirements.

19.   The Commercial Ground Transportation Policy requires that "all commercial ground transportation services regularly serving the [A]irport must show evidence of adequate liability insurance coverage; must operate under the terms of a current contract or permit with the Authority; must park, load and unload passengers only in those areas or locations on the airport specifically designated for such purposes; and must abide by all operating procedures specifically established for commercial ground transportation and all other applicable airport rules and regulations." *See* Commercial Ground Transportation Policy, at 2-3.

20.   The Aviation Authority's Rules and Regulations prohibit a person for any business, commercial, or revenue producing purposes, from conducting any business, commercial enterprise or activity on Airport property without first obtaining a written contract, permit or other form of written authorization from the Aviation Authority. §2.2.

21.   In addition, the Off-Airport Rental Car Policy states "[a]ll off-airport rental car companies deriving income from business generated at the Airport must enter into an agreement with the Authority to perform any portion of their business on the Airport." *See* Off-Airport Rental Car Policy, at 1.

7

22.   Congestion is a particularly serious problem at TPA, given that tens of thousands of vehicles traverse the Airport's roadways and park on Airport property on a daily basis.

23.   To control and reduce traffic and parking congestion, the Rules and Regulations require that "[a]ll Commercial ground transportation operators and Transportation Network Companies, unless otherwise provided by agreement or permit with the Authority, will only be allowed to deliver customers to the Airport and to meet pre-reserved customers at the Airport in places designated by the Authority." §8.1.

24.   The Off-Airport Rental Car Policy further requires "[a]ll off-airport rental car companies will transport their customers to the Airport and meet their customers at the Airport in locations designated by the Authority."  *See* Off-Airport Rental Car Policy, at 2.

25.   The Aviation Authority has attempted to minimize Airport congestion by opening a Rental Car Center away from the Airport Main Terminal with a dedicated curbside for off-airport rental car companies and by requiring these off-airport rental car companies to pick-up/drop-off customers at the Rental Car Center.

26.   By requiring that off-airport rental car companies conduct pick-ups and drop-offs in areas other than the Main Terminal curbsides, the Aviation Authority

8

significantly reduces congestion at the Airport Main Terminal for arriving and departing air travelers.

27.   Furthermore, commercial ground transportation fees are important to maintain the Airport's improvements and future financial viability.

28.   The Airport receives no local tax dollars.

29.   The Aviation Authority generates significant operating revenue from sources such as rental cars, parking, commercial ground transportation and other user fees, which constituted approximately 46% of TPA's operating budget in Fiscal Year 2017-2018.

30.   The Commercial Ground Transportation Policy provides that "the Aviation Authority will establish and collect fees and charges from the operators of airport commercial ground transportation services to ensure that the Authority generates the appropriate revenue from the provision of these services.  In establishing such fees and charges, the Authority will include the recovery of the costs of constructing the facilities used by each ground transportation service, and the Authority's maintenance, operational, administrative, and enforcement costs associated with such facilities." *See* Commercial Ground Transportation Policy, at 3.

31.   The commercial ground transportation fees are also mandated by federal law, which requires that the Aviation Authority adopt "a schedule of charges for use of

9

[its] facilities and services" that renders the Airport "as self-sustaining as possible" as a condition for federal grants. (49 U.S.C. § 47107(a)(13)(A). *See also id.* § 47101(a)(13) (articulating federal policy that airports be as financially self-sustaining as possible)).

32.   The FAA requires that "[r]ates charged for nonaeronautical use of the airport must be based on fair market value," which "can be determined by reference to negotiated fees charged for similar uses of the [A]irport". *See* FAA Order 5190.6B, 17.11 and 17.12.

33.   In Fiscal Year 2017-2018, there were eleven rental car companies (representing eighteen rental car brands) that operated at TPA pursuant to valid permits/contracts and paid the applicable fees.

34.   Collectively, those eleven companies paid the Aviation Authority approximately $43,870,922 in fees to operate at TPA in Fiscal Year 2017-2018.

35.   The Aviation Authority imposes the same basic contract/permit terms and fees on all "off-airport" rental car companies that operate at TPA.

36.   Each off-airport rental car company is required to pay the Aviation Authority a Transportation Facility Charge, Privilege Fee, and Per-Trip Fees. *See* Off-Airport Rental Car Policy, at 1-2.

10

37.    Pursuant to the Aviation Authority Resolution No. 2014-37, all off-airport rental car companies are required to pay the Aviation Authority a Transportation Facility Charge in the amount of $2.00 per rental transaction day (i.e, each 24-hour period), effective beginning on April 1, 2014.

38.    The Privilege Fee is "a set percentage of the gross receipts received by the off-airport rental car company from Airport generated business." *See* Off-Airport Rental Car Policy, at 1.

39.    Each off-airport rental car company was required to pay Privilege Fees in the amount of 8.5% of gross receipts from October 1, 2016 to February 13, 2018, and 9% of gross receipts beginning February 14, 2018. *See* Use and Permit Agreement for Off-Airport Rental Car Concessions, Section 5.01.

40.    In addition, an off-airport rental car operator is assessed Per-Trip Fees for each time its vehicles enter the Airport property and pick-up one or more Airport customers. *See id*, Section 2.05

41.    Each off-airport rental car company will pay a Per Trip Fee of $2.50 per trip during the first year of an operator's agreement, $3.50 per trip during the second year of the agreement, and $4.50 per trip during the third year of the agreement. *See id.,* Section 5.04, effective beginning on August 1, 2017.

11

**B.    Defendants' Commercial Ground Transportation Operations at the Airport.**

42.    Defendant, Turo Inc., is a Delaware corporation, with an address of 116 New Montgomery Street, Suite 700, San Francisco, California 94105, that is not registered to do business in the State of Florida.

43.    Turo is currently and has at all material times engaged in business in Hillsborough County, Florida, in concert with, as an agent and affiliate of multiple unknown Jane and John Doe Co-Defendants herein, to arrange for and collect the car rental fees for car rental deliveries and pickups of its Jane and John Doe Co-Defendant agents' rental cars at the Tampa International Airport.

44.    As set forth in the Verified Complaint, the multiple unknown Jane and John Doe Co-Defendants have, at all material times, conducted commercial ground transportation operations at the Airport in violation of the Regulations.

**1.    Defendants' Operations Fall Within the Scope of the Regulations.**

45.    Defendant, Turo is a web-based off-site rental car enterprise that advertises, schedules and charges for the delivery of rental cars owned by Turo Operators to car rental customers at TPA, through Turo's website or mobile application ("app").

12

46.   Turo's website, available at https://www.turo.com, describes its business

as a competitor of "traditional" rental car companies and repeatedly uses phrases like

"way better than a rental car," "skip the rental counter" and "not your typical car rental":



47.   Turo advertises available rental cars at TPA on its website and app,

provides tailored search functions for prospective renters, receives rental car requests,

processes reservations and payments, and retains a percentage of the proceeds from

each rental car transaction (usually 25%, depending on the insurance coverage selected).

13

48.    While Turo does not own its Co-Defendants' vehicles that Turo rents to the public, Turo nonetheless offers a full-service rental car experience comparable to that offered by "traditional" rental car companies.

49.    Turo tells prospective renters on its website, "[w]e'll be here for you every step of the way during your trip," and promises insurance coverage, "24/7 roadside assistance" and "24-hour customer support."

50.    Turo's car renters are required to register, reserve the rental cars, and pay Turo on the Turo website or app.

51.    In addition to screening renters, Turo offers Turo's car owner agents a variety of supportive services, including free professional photography for vehicles and a pricing algorithm designed to maximize profits.

52.    At the time the reservation is made on the Turo website or app, Turo charges the car renter the full cost for the car rental transaction by billing the renter's credit card on file in the renter's account on the Turo website or app.

53.    Turo pays its Co-Defendant car owner agents their portion of the Turo car rentals by direct deposit, initiated by Turo 30 minutes after the rental ends, or if a rental is for more than a week, Turo remits its Co-Defendants' rental car payment at the end of each week.

14

54.    Consistent with the comprehensive car rental services it offers, Turo carries or enforces a number of standardized umbrella policies that cover all Turo rental transactions.

55.    Turo has detailed "Terms of Service," a cancellation policy, an extension and late return policy, a minimum rental duration, a late fee schedule, a smoking policy, a pet policy, a fuel policy, a toll policy, a security deposit policy, a street parking policy, a nondiscrimination policy, and community guidelines on the Turo website and app.

56.    Turo also has a policy governing the removal of copyrighted material from car listings and reserves the right to modify listings on the app and website at its discretion.

57.    Indeed, Turo reserves the right to remove car owners or listings from the app and website for any reason or no reason.

58.    Turo's Co-Defendant car owner agents must comply with Turo's many policies or risk termination from Turo.

59.    In sum, the Turo and its Co-Defendants' rental car experience is standardized and controlled by Turo down to the small details.

60.    In competing with "traditional" rental car companies, Turo claims two distinguishing advantages: lower cost and the convenience of vehicle delivery.

15

61.   Turo's homepage advertises that customers can "bypass the rental counter" and "pick up your rental or get it delivered, wherever you need it, up to 35% less than traditional agencies":

# Way better than a rental car

Bypass the rental counter and book unforgettable cars from friendly locals

| THE CAR YOU WANT | WHERE YOU WANT IT |
|---|---|
| Choose from over 800 unique makes and models, from affordable daily drivers to rare specialty cars. | Pick up the car or get it delivered, wherever you need it, up to 35% less than traditional agencies. |

Book the perfect car

62.   Airport car rentals constitute part of Turo's business model and advertising.

63.   On Turo's "How Turo works" page, airport rental car delivery is one of three options provided for Turo and its Co-Defendants' to rent cars using Turo's app and website:

16



64.   In multiple places on its website, Turo affirmatively advertises as an "alternative to airport car rentals" and promotes that Turo's agents deliver rental cars to customers at over 300 airports, including TPA.

65.   In addition to the promotional language on its website, Turo structures its website functions and default options to facilitate car rental transactions at TPA.

66.   For instance, Turo aggregates listings that offer TPA car rental pickups and drop-offs under a single easily searchable tab called "TPA – Tampa International Airport, Tampa, FL."

17

67.    When prospective car renters in Tampa click the search box on Turo's homepage to input their desired location, a dropdown menu pre-populated by Turo lists "TPA – Tampa International Airport" as one of the suggested locations.

68.    Similarly, Turo promotes its airport delivery option to car renters on its "Tampa" page, which lists "TPA – Tampa International Airport, Tampa, FL" as one of the suggested search options for nearby car rental locations, advises renters to "[s]kip the rental counter" and provides a "search TPA" button:



69.    When a prospective car renter selects the suggested search option for "TPA – Tampa International Airport, Tampa, FL", he or she is directed to a long list of cars available for rent displayed under the words "Skip the rental counter. 198 cars at TPA – Tampa International Airport, Tampa, FL". Many of those 198 listings expressly offer delivery to TPA.

18

70.   On its website, Turo advertises "car rental alternatives near Tampa International Airport" and provides reviews by previous renters dating back to December 31, 2017 describing their experiences engaging in rental car transactions through Turo and the Jane and John Doe Co-Defendants at the Airport.

71.   Neither Turo nor any Co-Defendants have obtained a contract or permit as required by the Aviation Authority to conduct commercial rental car or any other commercial ground transportation activities on Airport property, and accordingly both Turo and its Co-Defendants have violated the Aviation Authority's Regulations.

### 2.   Turo's Commercial Ground Transportation Operations at the Airport.

72.   On April 28, 2017, September 18, 2018 and January 9, 2019, the Aviation Authority sent a cease and desist letter to Turo advising that Turo was violating the Aviation Authority's Regulations and was therefore trespassing, a copy of which cease and desist letters are attached hereto as Exhibit "A".

73.   On at least eight occasions between December 3, 2018 and December 5, 2018, Defendants engaged in rental car transactions on Airport property using the Turo website or app.

74.   Of the eight occasions, three (3) involved Turo Operators delivering or picking up rental vehicles curbside at the Airport Main Terminal; two (2) involved Turo

19

Operators delivering and picking up rental vehicles to the Airport passenger in the Short Term Parking Garage; and three (3) involved a parked rental vehicle that was picked-up and returned to the Economy Parking Garage at the Airport, all without a permit or contract with the Aviation Authority, in multiple violations of the Aviation Authority's Regulations.

**C.    Defendants' Commercial Ground Transportation Operations Undermine the Legitimate Public Interest Purposes of the Regulations.**

75.    By not obtaining a required contract or permit from the Aviation Authority and violating the Regulations, the Defendants undermine the Aviation Authority's objective of providing ground transportation services consistent with public safety.

76.    To promote the efficient movement of passengers to and from the Airport, the Commercial Ground Transportation Policy states that Aviation Authority will provide a system where commercial ground transportation operators pick up and drop off passengers at the Airport.

77.    Rental car companies are prohibited from conducting commercial ground transportation services curbside at the Main Terminal at TPA, in order to provide less congestion for the primarily non-commercial private vehicles.

78.    By funneling commercial ground transportation activity to the Rental Car Center, Airport Quad Lots, and elsewhere, the Aviation Authority reduces congestion

20

and other adverse impacts to the limited curbside space available at the Main Terminal, where passengers need access to be picked up or dropped off safely by friends and family.

79.     Defendants have undermined the efficiencies of the Aviation Authority's traffic flow system by conducting their commercial ground transportation operations curbside at the Main Terminal, in parking garages at the Airport, and in other areas of the Airport where commercial rental car activity is prohibited, thereby increasing congestion and impairing the efficient movement of passengers, in violation of the Aviation Authority's Regulations.

80.     The Aviation Authority also seeks to provide fair, respectful competition among providers of ground transportation services and to comply with the Federal Grant Assurances requiring it to operate the Airport safely and in a self-sustaining manner, pursuant to Federal law.

81.     An objective of the Commercial Ground Transportation Policy is to avoid "destructive competition which would impair the quality of services to the public or lead to uncertainty, disruption or instability of commercial ground transportation services at the airport." *See* Commercial Ground Transportation Policy, at 2.

82.     Defendants' failure to obtain a contract or permit and follow the Aviation Authority's Regulations allows Defendants to unfairly undercut the prices of authorized

21

commercial ground transportation operators, allows Defendants to obtain a non-monetary competitive advantage by operating at the Airport in areas where other commercial ground transportation operators that must comply with the Aviation Authority's Regulations cannot, and hinders the Aviation Authority's ability to be self-sustaining and conduct safe and efficient airport operations.

83.   Defendants have utilized the passenger parking garages and parking lots on Airport property to park rental cars for their commercial purposes, which interferes with the Aviation Authority's efforts to make adequate parking available for Airport passengers.

84.   Defendants' continued trespasses at the Airport to conduct unauthorized commercial ground transportation operations on Airport property undermines the objectives of the Aviation Authority's Regulations, jeopardizes the Airport's federal funding by preventing the Aviation Authority from complying with its federal grant obligations, and gives rise to an irreparable harm with no adequate remedy at law, which cannot be solely remedied by money damages.

85.   The injury to the Aviation Authority consists of the breakdown of its ground transportation system, violation of its federal grant obligations, and loss of revenue, which outweighs any potential harm to the Defendants if they are prohibited from entering Airport property without first complying with the same operational, fee,

22

and reporting requirements that apply to all other commercial ground transportation operators at the Airport.

86.    As a result of the Defendants' failure to comply with the Aviation Authority's Regulations, the Aviation Authority lacks the information required to quantify all of Turo and the Turo Operators' violations of the Regulations to calculate the resulting damages.

87.    Defendants' continued trespasses to conduct unauthorized commercial ground transportation operations at the Airport undermines the fair, competitive environment required by the Regulations, avoids compliance with the safety, traffic and parking regulations established by the Regulations, and unfairly takes business from authorized commercial ground transportation operators who are incurring costs to comply with the governing Regulations, thereby reducing the revenues the Aviation Authority collects and frustrating multiple other non-revenue objectives of the Aviation Authority's Regulations.

88.    Authorized commercial ground transportation operators may avoid servicing the Airport if the Defendants are allowed to continue trespassing at the Airport and violating the Regulation's operating and fee requirements to obtain these unfair competitive advantages in violation of the Aviation Authority's Regulations.

23

## II.   THE AVIATION AUTHORITY IS ENTITLED TO TEMPORARY INJUNCTIVE RELIEF.

The Aviation Authority is entitled to temporary injunctive relief because this motion satisfies the elements of (1) likelihood of irreparable harm; (2) no adequate remedy at law; (3) substantial likelihood of success on the merits (clear legal right to relief); (4) the threatened injury outweighs any potential harm to the Defendants; and (5) that the public interest will be served by issuance of the temporary injunction. *See Neagele Outdoor Advert. Co. v. City of Jacksonville*, 659 So. 2d 1046, 1047 (Fla. 1995); *Polk County v. Mitchell*, 931 So. 2d 922, 926 (Fla. 2d DCA 2006); *Yardley v. Albu*, 826 So. 2d 467, 470 (Fla. 5th DCA 2002); *JonJuan Salon, Inc. v. Acosta*, 922 So. 2d 1081, 1083 (Fla. 4th DCA 2006).

Notwithstanding the general requirements for issuance of a temporary injunction, "this showing is relaxed when an injunction is sought by a governmental entity to enforce its police powers." *Miami-Dade County v. Fernandez*, 905 So. 2d 213, 215 (Fla. 3d DCA 2005) (emphasis added).

"The primary purpose of a temporary injunction is to preserve the status quo while the merits of the underlying dispute are litigated." *Manatee County v. 1187 Upper James of Fla., LLC,* 104 So. 3d 1118, 1121 (Fla. 2d DCA 2012) (citing *Smith v. Hous. Auth. of Daytona Beach,* 3 So. 2d 880, 881 (Fla. 1941)). As set forth herein,

24

the temporary injunction sought is narrowly tailored to meet the primary purpose of preserving the status quo.

**A.**   **There is a substantial likelihood of irreparable harm if Turo and the Turo Operators are Not Enjoined from Conducting Commercial Ground Transportation Operations at the Airport.**

The harm caused to the Aviation Authority by the Defendants' commercial ground transportation operations is irreparable. An injury is irreparable where the damage sustained includes injury that is not capable of being quantified for the purpose of imposing an award of monetary damages. *Kailin Hu v. Haitian Hu*, 942 So. 2d 992, 995 (Fla. 5th DCA 2006); *see also Sun Elastic Corp. v. O.B. Indus.*, 603 So. 2d 516, 517 n.3 (Fla. 3d DCA 1992).

Irreparable harm is <u>presumed to be implicated</u> where a governmental entity seeks "an injunction in order to enforce its police power. . . ." *Polk County*, 931 So. 2d at 926 (emphasis added); *see also Metro. Dade County v. O'Brien*, 660 So. 2d 364, 365 (Fla. 3d DCA 1995); *P.M. Realty & Invs., Inc. v. City of Tampa*, 779 So. 2d 404, 406 (Fla. 2d DCA 2000); *Fernandez*, 905 So. 2d at 215.

In *Polk County*, Polk County sought a temporary injunction against a business for violating sections of the Polk County Land Development Code by posting unauthorized and unapproved business signs. The Second District Court of Appeal

25

found that the trial court erred in its finding that Polk County did not properly plead and prove the elements required for the issuance of a temporary injunction under Rule 1.610, The *Polk County* court explained:

> "Where a government seeks an injunction in order to enforce its police power, the first element is established; that is, 'any alternative legal remedy is ignored and irreparable harm is presumed.'"

*Polk County,* 931 So. 2d at 926 (citations omitted).

In *Manatee County,* the Second District Court of Appeal found that Manatee County was entitled to temporary injunctive relief to compel compliance with an ordinance that required a landowner to limit the hours and decibel level of live entertainment at a restaurant. *Manatee County,* 104 So. 3d at 1122. In *P.M Realty & Investments, Inc.,* the Second District Court of Appeal affirmed a temporary injunction issued on behalf of a City that sought to compel enforcement of its ordinances against adult nightclub operators who operated in violation of the subject ordinances. *P.M. Realty & Invs., Inc.,* 779 So. 2d at 406. In *Metropolitan Dade County,* the Third District Court of Appeal held that it was improper to deny a temporary injunction sought by Dade County where business owners began business operations without complying with the applicable county code because irreparable

26

harm is presumed where a government seeks an injunction to enforce its police power. *Metro. Dade County*, 660 So. 2d at 365.

Even without the presumption of irreparable harm accorded to governmental entities, it is well settled law that equity will enjoin repeated or continuous trespasses. *See Welch v. Graves Bros. Co.*, 117 So. 2d 853, 855 (Fla. 2d DCA 1960); *Overstreet v. Lamb*, 128 So. 2d 897, 900 (Fla. 1st DCA 1961). It is also well established that a private party is entitled to seek an injunction to prevent violation of a restrictive covenant regarding the use of real property. *Jack Eckerd Corp. v. 17070 Collins Ave. Shopping Ctr., Ltd.*, 563 So. 2d 103, 105 (Fla. 3d DCA 1990). In such a case, appropriate allegations showing the violation of the restrictive covenant are sufficient and it is not necessary to allege, or show, that the violation amounts to an irreparable injury. *Id.*

In this case, the Aviation Authority is seeking to enforce the Regulations, which are being violated by Turo and the Turo Operators despite actual notice of the violations. Irreparable harm, the first element required for a temporary injunction, should be presumed because the Aviation Authority is a governmental entity that has been forced to file this action to enforce the Regulations and prevent the trespass by the Defendants on Airport property. Furthermore, the Aviation Authority has satisfied

27

the irreparable harm prong by showing ongoing trespasses and violations of the Regulations.

As a result of Defendants' failures to comply with the requirements under the Regulations, the Aviation Authority lacks the information required to quantify all of the Defendants' violations of the Regulations to calculate the resulting damages. As such, the amounts of monetary damages are uncertain because the Aviation Authority is unable to determine the amount of Transportation Facility Charges, Privilege Fees, and Per Trip Fees to which the Aviation Authority is entitled under the provisions of the Regulations and applicable Policies. The harm to the Aviation Authority is also irreparable because the non-monetary damages listed below are incapable of being quantified.

**B.    There is No Adequate Remedy at Law.**

The non-monetary damages to the Aviation Authority include, *inter alia,* reduced passenger safety due to increased congestion and traffic, reduced parking due to unauthorized rental car parking, inefficient traffic flow at the Airport, increased wear and tear on Airport facilities, unfair competition with the other rental car companies due to Defendants' failure to follow the same rules that limit the other rental car companies' ability to deliver and park rental cars at TPA, and lack of fair and respectful competition among the providers of commercial ground

28

transportation operations at the Airport. The Defendants' actions undermine these objectives which cannot be remedied by monetary damages.

**C.    The Aviation Authority is Substantially Likely to Succeed on the Merits and Has a Clear Legal Right to Enforce the Regulations.**

The Aviation Authority is empowered to enforce the Regulations in order to ensure the objective to promote high quality and reasonably priced commercial ground transportation services consistent with public safety and convenience, to ensure the efficient movement of passengers to and from the Airport, to foster respectful competition among providers of ground transportation services, and to develop revenues for support of the Airport.

Where "one opens a business aware of the violations to the ordinances and continues to operate that business in violation, the government has a clear legal right to relief." *Manatee County*, 104 So. 3d at 1121 (emphasis added) (citing *P.M. Realty & Invs., Inc. v. City of Tampa*, 779 So. 2d 404, 406 (Fla. 2d DCA 2000); *Ware v. Polk County*, 918 So. 2d 977, 980 (Fla. 2d DCA 2005)). In *Fernandez*, the court found that Miami-Dade County demonstrated a "substantial likelihood of success on the merits" of the case where the defendants admitted that they were operating a commercial enterprise in violation of the county code. *Fernandez*, 905 So. 2d at 216.

29

An airport authority seeking to enforce its rules and regulations is entitled to temporary injunctive relief as a governmental entity. *See, e.g., Harrell's Candy Kitchen, Inc. v. Sarasota-Manatee Airport Auth.,* 111 So. 2d 439 (Fla. 1959). In *Harrell's Candy,* the Sarasota-Manatee Airport Authority, a governmental entity created by a special act of the Florida Legislature, sought to enjoin the erection of a pyramid or superstructure atop a building off airport property near a runway. *Id.* at 440. The trial court entered a temporary injunction, which the defendant property owners sought to dissolve on grounds that the airport zoning regulations at issue were unconstitutional. *Id.* at 441. The trial court declined to dissolve the temporary injunction. *Id.* The Florida Supreme Court affirmed the trial court's denial of the motion to dissolve the temporary injunction and found that the Sarasota-Manatee Airport Authority had the power to enforce the zoning regulations at issue. *Id.*

In this case, the Aviation Authority, created by a special act of the Florida Legislature, is tasked with the responsibility of operating the Airport. Pursuant to this task, the Aviation Authority promulgates and enforces rules and regulations related to the operation of the Airport. Turo, through its agents, the Turo Operators, directed Airport passengers who used the Turo website or app to engage in rental car transactions on Airport property with the Turo Operators notwithstanding Turo's actual knowledge that such unauthorized commercial ground transportation

30

operations were in violation of the Aviation Authority's Regulations. Despite having actual knowledge of the requirements of the Regulations, Turo and the Turo Operators have continued to conduct their unauthorized rental car business at the Airport and to hold themselves out to the public as providing commercial rental car services at the Airport on the Turo website and app in flagrant disregard of the Regulations. Defendants' continued commercial ground transportation operations in violation of the Regulations gives the Aviation Authority a clear legal right to the issuance of the temporary injunction sought here.

### D.   The Balance of Hardships Favors Issuance of the Temporary Injunction.

An injunction that merely seeks compliance with binding laws cannot be found to unduly harm the enjoined party. *Polk County*, 931 So. 2d at 926. Defendants have no right to conduct their car rental business at the Airport for commercial gain in violation of the Aviation Authority's Regulations, and to hold themselves out to the public as providing commercial rental car services at the Airport until they comply with the requirements of the Regulations. As such, there is no harm to Turo and the multiple unknown Jane and John Doe Co-Defendants from the issuance of the temporary injunction which seeks a court order to enforce the Regulations.

31

**E.    The Public Interest is Served by Issuance of the Temporary Injunction.**

The grant of a temporary injunction to enforce a governmental entity's permit requirements serves the public interest because "the public has an interest in seeing that a county's ordinances and permit requirements are observed." *Ware*, 918 So. 2d at 980 (citations omitted); *see also Fernandez*, 905 So. 2d at 216 ("[T]he county and its citizens have a clear public interest in compliance with the county's ordinances and the city zoning plan.").

Here, the public has an interest in the Aviation Authority fulfilling its mission to provide safe, secure, customer-friendly, affordable services and facilities at the Airport. Turo and the Turo Operators undermine this mission, in a matter that disserves the public interest.

**III.   THE BOND REQUIREMENT, IF ANY, SHOULD BE MINIMAL.**

Rule 1.610(b) of the Florida Rules of Civil Procedure provides the court with discretion to dispense with the bond requirement where an action is issued on the pleading of a municipality or the state or any political subdivision thereof. The Aviation Authority is such an entity.

In this case, the bond amount, if any, should be minimal because Turo and the Turo Operators have no legal right to conduct their commercial ground transportation operations at the Airport without first complying with the Regulations. As such, any

32

alleged damages resulting from the issuance of the temporary injunction, if later dissolved, are minimal.

## IV.   **CONCLUSION**.

Wherefore, for the foregoing reasons, the Hillsborough County Aviation Authority respectfully requests that the Court enter a temporary injunction (a) enjoining Defendants and/or anyone acting or purporting to act on their behalf or in concert with them from entering upon Airport property to conduct unauthorized commercial ground transportation operations until such time as Defendants comply with the provisions of the Regulations; and (b) enjoining Turo from offering, contracting with or charging anyone to rent any car for delivery or pick-up at TPA on the Turo app or website until such time as Defendants comply with the provisions of the Regulations.

Dated this 25th day of March, 2019.

/s/ Keith A. Graham
Keith A. Graham
Florida Bar No. 0705314
Marchena and Graham, P.A.
976 Lake Baldwin Lane, Suite 101
Orlando, Florida 32814
Telephone No.: (407) 658-8566
Facsimile No.: (407) 281-8564
Attorney for Hillsborough County
Aviation Authority

33

## VERIFICATION

The undersigned, David Scott Knight, being over 18 years only and of sound mind, based on his personal knowledge obtained as the Aviation Authority's Assistant General Counsel, verifies that the preceding allegations are true and accurate.

By: /David Scott Knight
Title: Assistant General Counsel
Hillsborough County Aviation Authority

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

The foregoing instrument was acknowledged before me this 25th day of _March_ , 2019 by _David Scott Knight_ , as _Asst. Gen. Counsel_ for Hillsborough County Aviation Authority, who is personally known to me or who has produced _____ as identification.

Jacqueline Smith
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF924361
Expires 11/20/2019

_Jacqueline Smith_
Printed Name: _Jacqueline Smith_
Notary Public
My Commission Expires: _/ /_

34

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing has been filed using the Florida E-Portal and a true and correct copy of the foregoing has been furnished by U.S. Mail, postage prepaid, this 25th day of March 2019 to:

California Registered Agent:
Turo Inc.
Registered Agent and Chief Legal Officer
Michelle Fang
116 New Montgomery Street, Suite 700
San Francisco, CA 94105

Delaware Registered Agent:
Turo Inc.
c/o Incorporating Services, Ltd.
3500 S. Dupont Hwy.
Dover, DE  19901

/s/ Keith A. Graham
Keith A. Graham
Florida Bar No. 0705314
Marchena and Graham, P.A.
976 Lake Baldwin Lane, Suite 101
Orlando, Florida 32814
Telephone No.: (407) 658-8566
Facsimile No.: (407) 281-8564
Attorney for Hillsborough County
Aviation Authority

# EXHIBIT A



Peter O. Knight Airport
Plant City Airport
Tampa Executive Airport

April 28, 2017                                        VIA CERTIFIED 7016 7050 0000 5394 2669

Hillsborough County
Aviation Authority
P.O. Box 22287
Tampa, Florida 33622
phone/ 813-870-8700
fax/ 813-875-6670
TampaAirport.com

Mr. Andre Haddad
Chief Executive Officer
Turo, Inc.
667 Mission Street
San Francisco, CA 94105

Dear Mr. Haddad:

It has been observed by staff of the Hillsborough County Aviation Authority (Authority), as well as other third parties, that Turo, Inc. (Turo) is operating at Tampa International Airport (Airport). Furthermore, a search of Turo's website (www.turo.com) shows that Turo makes specific reference to delivering rental vehicles to customers at the Airport curbsides (see attached screen shot).

The Authority has specific requirements for commercial vehicle operations. Currently, Turo does not have any permits or agreements with the Authority allowing for commercial vehicle operations at the Airport. All commercial vehicle operations by Turo or Turo representatives/drivers must comply with the Authority's requirements.

This letter serves as official notice that Turo and Turo representatives/drivers must immediately cease and desist operations at the Airport until such time as Turo reaches an agreement or acquires a permit from the Authority allowing commercial vehicle operations by Turo and Turo representatives/drivers. This also includes immediately removing all references regarding operations at the Airport from Turo's website.

Authority staff is available to meet with Turo and discuss the specific requirements needed to operate at the Airport. In the interim, attached is a copy of the Airport's Ground Transportation Operating Procedures (GTOPS) Manual which outlines the policies and procedures for commercial ground transportation operations at the Airport.

Joseph W. Lopano, Chief Executive Officer | Robert I. Watkins, Chairman | Gary W. Harrod, Vice Chairman | Commissioner Victor D. Crist, Secretary
Brig. General Chip Diehl, Treasurer | Mayor Bob Buckhorn, Assistant Secretary / Assistant Treasurer

If you have any questions, please call me at (813) 554-1447.

Sincerely,

Laurie Noyes
Vice President of Airport Concessions


cc:   Karl Martin, Senior Manager, Parking and Ground Transportation
      Chief Paul Sireci, Tampa International Airport Police Department
      David Scott Knight, Assistant General Counsel



**Tampa International Airport, Tampa, FL, United States**
May 2, 2017 10:00 AM - May 9, 2017 10:00 AM

# Curbside delivery

### NEVER WAIT AT THE RENTAL COUNTER AGAIN

93 cars available at Tampa International Airport



FREE DELIVERY

**CHRYSLER 200** 2016
New listing

$**29**
per day



Tampa
International
Airport

Peter O. Knight Airport
Plant City Airport
Tampa Executive Airport

Hillsborough County
Aviation Authority
P.O. Box 22287
Tampa, Florida 33622
phone/ 813-870-8700
fax/ 813-875-6670
TampaAirport.com

September 18, 2018                                    VIA CERTIFIED 7018 0040 0000 0502 2843

Ms. Michelle Fang
General Counsel
Turo, Inc.
667 Mission Street
4th Floor
San Francisco, CA 94105

Dear Ms. Fang:

On April 28, 2017, the Hillsborough County Aviation Authority (Authority) issued Turo, Inc. (Turo) official notice (see attached) that Turo and Turo representatives/drivers must immediately cease and desist operations at Tampa International Airport (Airport) until such time as Turo reaches an agreement or acquires a permit from the Authority allowing commercial vehicle operations by Turo and Turo representatives/drivers.

Despite several meetings last year and a recent procurement effort over the last several months, negotiations between the Authority and Turo have failed to result in an operating agreement with Turo at the Airport. Additionally, Turo has not received a permit from the Authority for commercial vehicle operations.

This letter serves as a second official notice that Turo and Turo representatives/drivers must immediately cease and desist operations at the Airport. This includes immediately removing all references regarding the Airport and/or operations at the Airport from all of Turo's electronic platforms and websites.

The Authority has specific requirements for commercial vehicle operations at the Airport, including the requirement to have a current operating agreement or permit. As of the date of this letter, should Authority staff observe Turo and/or Turo representatives/drivers illegally operating anywhere on Airport property, the Authority will take all available and necessary steps to enforce its Policies, Standard Procedures, Rules and Regulations, and Operating Directives relating to commercial vehicle operations and concessions at the Airport, including issuance of trespassing

Joseph W. Lopano, Chief Executive Officer | Robert I. Watkins, Chairman | Gary W. Harrod, Vice Chairman | Commissioner Victor D. Crist, Secretary Brig. General Chip Diehl, Treasurer | Mayor Bob Buckhorn, Assistant Secretary / Assistant Treasurer

Page Two
September 18, 2018

warnings and citations.  The Authority also reserves the right to exercise all remedies available to it at law or in equity.

Authority staff is available to meet should Turo wish to resume discussions regarding operating at the Airport.

If you have any questions, please call me at (813) 801-6055.

Sincerely,

David Scott Knight
Assistant General Counsel

cc:    Michael Stephens, General Counsel
       John Tiliacos, Executive Vice President, Operations and Customer Service
       Laurie Noyes, Vice President, Airport Concessions
       Charlie Vazquez, Chief, Tampa International Airport Police Department
       Lloyd Tillmann, Director of Operations
       Gina Evans, Director of Governmental Relations, Communications
       Joel Feldman, C.M., Senior Manager, Airport Concessions
       Karl Martin, Senior Manager, Parking and Ground Transportation



Peter O. Knight Airport
Plant City Airport
Tampa Executive Airport

January 9, 2019

Hillsborough County
Aviation Authority
P.O. Box 22287
Tampa, Florida 33622
phone/ 813-870-8700
fax/ 813-875-6670
TampaAirport.com

Andre Haddad
Chief Executive Officer
Turo Inc.
116 New Montgomery Street, Suite 700
San Francisco, CA 94105

Dear Mr. Haddad,

The Hillsborough County Aviation Authority ("Authority") has received reports and determined that your company, Turo Inc. ("Turo"), has been conducting business operations through its app based platform and agents at Tampa International Airport ("Airport"), in violation of Policy P310, Commercial Ground Transportation, which requires a use and permit agreement to perform such business at Tampa International Airport. As you have been previously advised on multiple occasions, both verbally and in writing, including two previous cease and desist orders from the Authority, similar to all other ground transportation operators at the Airport, Turo and its agents are not authorized to conduct business on Airport property without first entering into a use and permit agreement with the Authority, including providing vehicles for compensation. Should operations continue at the Airport without proper authorization, the Authority will pursue any and all remedies available to it at law and in equity.

Pursuant to this letter, Turo and the owner of the vehicle set out below must immediately cease and desist all business operations at the Airport.

To obtain a use and permit agreement, please contact the Authority's Concessions Department at (813) 554-1418.

The subject event and vehicle details are as follows:
Date & Time: December 4, 2018 at 5:00 p.m.
Location: Short Term Parking – roof level
Vehicle Make & Model: Ford Mustang 2018
Vehicle License Plate & State: (FL) HCTN99
Name of vehicle operator/Turo agent: Automix (Derek Norman Jettmar)

Regards,

John Tillacos
Executive Vice President of Operations and Customer Service

cc:     Michelle Fang, Chief Legal Officer, Turo Inc.
        Michael Stephens, General Counsel

Joseph W. Lopano, Chief Executive Officer | Robert I. Watkins, Chairman | Gary W. Harrod, Vice Chairman
Commissioner Lesley "Les" Miller, Jr., Secretary | Brig. General Chip Diehl, Treasurer | Mayor Bob Buckhorn, Asst. Secretary / Asst. Treasurer



Tampa
International
Airport

Peter O. Knight Airport
Plant City Airport
Tampa Executive Airport

Hillsborough County
Aviation Authority
P.O. Box 22287
Tampa, Florida 33622
phone/ 813-870-8700
fax/ 813-875-6670
TampaAirport.com

January 9, 2019

Andre Haddad
Chief Executive Officer
Turo Inc.
116 New Montgomery Street, Suite 700
San Francisco, CA 94105

Dear Mr. Haddad,

The Hillsborough County Aviation Authority ("Authority") has received reports and determined that
your company, Turo Inc. ("Turo"), has been conducting business operations through its app based
platform and agents at Tampa International Airport ("Airport"), in violation of Policy P310,
Commercial Ground Transportation, which requires a use and permit agreement to perform such
business at Tampa International Airport. As you have been previously advised on multiple
occasions, both verbally and in writing, including two previous cease and desist orders from the
Authority, similar to all other ground transportation operators at the Airport, Turo and its agents are
not authorized to conduct business on Airport property without first entering into a use and permit
agreement with the Authority, including providing vehicles for compensation. Should operations
continue at the Airport without proper authorization, the Authority will pursue any and all remedies
available to it at law and in equity.

Pursuant to this letter, Turo and the owner of the vehicle set out below must immediately cease and
desist all business operations at the Airport.

To obtain a use and permit agreement, please contact the Authority's Concessions Department at
(813) 554-1418.

The subject event and vehicle details are as follows:
Date & Time: December 5, 2018 at 1:00 p.m.
Location: Economy Parking Garage; Level 4, Orange, Aisle 11
Vehicle Make & Model: Mercedes Benz Metris van 2016
Vehicle License Plate & State: (FL) JYNE30
Name of vehicle operator/Turo agent: Dane Phillip Lawrence (aka Gourmet Everything)

Regards,

John Tillacos
Executive Vice President of Operations and Customer Service

cc:    Michelle Fang, Chief Legal Officer, Turo Inc.
       Michael Stephens, General Counsel

Joseph W. Lopano, Chief Executive Officer | Robert I. Watkins, Chairman | Gary W. Harrod, Vice Chairman
Commissioner Lesley "Les" Miller, Jr., Secretary | Brig. General Chip Diehl, Treasurer | Mayor Bob Buckhorn, Asst. Secretary / Asst. Treasurer



Peter O. Knight Airport
Plant City Airport
Tampa Executive Airport

Hillsborough County
Aviation Authority
P.O. Box 22287
Tampa, Florida 33622
phone/ 813-870-8700
fax/ 813-875-6670
TampaAirport.com

January 9, 2019

Andre Haddad
**Chief Executive Officer**
**Turo Inc.**
**116 New Montgomery Street, Suite 700**
**San Francisco, CA 94105**

Dear Mr. Haddad,

The Hillsborough County Aviation Authority ("Authority") has received reports and determined that your company, Turo Inc. ("Turo"), has been conducting business operations through its app based platform and agents at Tampa International Airport ("Airport"), in violation of Policy P310, Commercial Ground Transportation, which requires a use and permit agreement to perform such business at Tampa International Airport. As you have been previously advised on multiple occasions, both verbally and in writing, including two previous cease and desist orders from the Authority, similar to all other ground transportation operators at the Airport, Turo and its agents are not authorized to conduct business on Airport property without first entering into a use and permit agreement with the Authority, including providing vehicles for compensation. Should operations continue at the Airport without proper authorization, the Authority will pursue any and all remedies available to it at law and in equity.

Pursuant to this letter, Turo and the owner of the vehicle set out below must immediately cease and desist all business operations at the Airport.

To obtain a use and permit agreement, please contact the Authority's Concessions Department at (813) 554-1418.

**The subject event and vehicle details are as follows:**
Date & Time: December 3, 2018 at 3:00 p.m.
Location: Economy Parking Garage; Level 4, Orange, Aisle 11
Vehicle Make & Model: Hyundai Elantra 2018
Vehicle License Plate & State: (FL) KQQP47
Name of vehicle operator/Turo agent: Byron Anthony Johnson

Regards,

John Tillacos
Executive Vice President of Operations and Customer Service

cc:     Michelle Fang, Chief Legal Officer, Turo Inc.
        Michael Stephens, General Counsel

Joseph W. Lopano, Chief Executive Officer | Robert I. Watkins, Chairman | Gary W. Harrod, Vice Chairman
Commissioner Lesley "Les" Miller, Jr., Secretary | Brig. General Chip Diehl, Treasurer | Mayor Bob Buckhorn, Asst. Secretary / Asst. Treasurer



Tampa
International
Airport

Peter O. Knight Airport
Plant City Airport
Tampa Executive Airport

Hillsborough County
Aviation Authority
P.O. Box 22287
Tampa, Florida 33622
phone/ 813-870-8700
fax/ 813-875-6670
TampaAirport.com

January 9, 2019

Andre Haddad
Chief Executive Officer
Turo Inc.
116 New Montgomery Street, Suite 700
San Francisco, CA 94105

Dear Mr. Haddad,

The Hillsborough County Aviation Authority ("Authority") has received reports and determined that
your company, Turo Inc. ("Turo"), has been conducting business operations through its app based
platform and agents at Tampa International Airport ("Airport"), in violation of Policy P310,
Commercial Ground Transportation, which requires a use and permit agreement to perform such
business at Tampa International Airport. As you have been previously advised on multiple
occasions, both verbally and in writing, including two previous cease and desist orders from the
Authority, similar to all other ground transportation operators at the Airport, Turo and its agents are
not authorized to conduct business on Airport property without first entering into a use and permit
agreement with the Authority, including providing vehicles for compensation. Should operations
continue at the Airport without proper authorization, the Authority will pursue any and all remedies
available to it at law and in equity.

Pursuant to this letter, Turo and the owner of the vehicle set out below must immediately cease and
desist all business operations at the Airport.

To obtain a use and permit agreement, please contact the Authority's Concessions Department at
(813) 554-1418.

**The subject event and vehicle details are as follows:**
Date & Time: December 5, 2018 at 3:00p.m.
Location: Economy Parking Garage; Level 4, Orange, Aisle 11
Vehicle Make & Model: Ford Fusion 2016
Vehicle License Plate & State: (FL) HSVS63
Name of vehicle operator/Turo agent: Eriselda Marku

Regards,

John Tillacos
Executive Vice President of Operations and Customer Service

cc:     Michelle Fang, Chief Legal Officer, Turo Inc.
        Michael Stephens, General Counsel

Joseph W. Lopano, Chief Executive Officer | Robert I. Watkins, Chairman | Gary W. Harrod, Vice Chairman
Commissioner Lesley "Les" Miller, Jr., Secretary | Brig. General Chip Diehl, Treasurer | Mayor Bob Buckhorn, Asst. Secretary / Asst. Treasurer



Tampa
International
Airport

Peter O. Knight Airport
Plant City Airport
Tampa Executive Airport

Hillsborough County
Aviation Authority
P.O. Box 22287
Tampa, Florida 33622
phone/ 813-870-8700
fax/ 813-875-6670
TampaAirport.com

January 9, 2019

Andre Haddad
Chief Executive Officer
Turo Inc.
116 New Montgomery Street, Suite 700
San Francisco, CA 94105

Dear Mr. Haddad,

The Hillsborough County Aviation Authority ("Authority") has received reports and determined that your company, Turo Inc. ("Turo"), has been conducting business operations through its app based platform and agents at Tampa International Airport ("Airport"), in violation of Policy P310, Commercial Ground Transportation, which requires a use and permit agreement to perform such business at Tampa International Airport. As you have been previously advised on multiple occasions, both verbally and in writing, including two previous cease and desist orders from the Authority, similar to all other ground transportation operators at the Airport, Turo and its agents are not authorized to conduct business on Airport property without first entering into a use and permit agreement with the Authority, including providing vehicles for compensation. Should operations continue at the Airport without proper authorization, the Authority will pursue any and all remedies available to it at law and in equity.

Pursuant to this letter, Turo and the owner of the vehicle set out below must immediately cease and desist all business operations at the Airport.

To obtain a use and permit agreement, please contact the Authority's Concessions Department at (813) 554-1418.

The subject event and vehicle details are as follows:
Date & Time: December 4, 2018 at 1:00 p.m.
Location: Economy Parking Garage; Level 2, Orange, Aisle 12
Vehicle Make & Model: Ford Mustang 2016
Vehicle License Plate & State: (FL) ITMV83
Name of vehicle operator/Turo agent: Chad Darius McClellan

Regards,

John Tiliacos
Executive Vice President of Operations and Customer Service

cc:    Michelle Fang, Chief Legal Officer, Turo Inc.
       Michael Stephens, General Counsel

Joseph W. Lopano, Chief Executive Officer | Robert J. Watkins, Chairman | Gary W. Harrod, Vice Chairman
Commissioner Lesley "Les" Miller, Jr., Secretary | Brig. General Chip Diehl, Treasurer | Mayor Bob Buckhorn, Asst. Secretary / Asst. Treasurer



Peter O. Knight Airport
Plant City Airport
Tampa Executive Airport

Hillsborough County
Aviation Authority
P.O. Box 22287
Tampa, Florida 33622
phone/ 813-870-8700
fax/ 813-875-6670
TampaAirport.com

January 9, 2019

Andre Haddad
Chief Executive Officer
Turo Inc.
116 New Montgomery Street, Suite 700
San Francisco, CA 94105

Dear Mr. Haddad,

The Hillsborough County Aviation Authority ("Authority") has received reports and determined that your company, Turo Inc. ("Turo"), has been conducting business operations through its app based platform and agents at Tampa International Airport ("Airport"), in violation of Policy P310, Commercial Ground Transportation, which requires a use and permit agreement to perform such business at Tampa International Airport.  As you have been previously advised on multiple occasions, both verbally and in writing, including two previous cease and desist orders from the Authority, similar to all other ground transportation operators at the Airport, Turo and its agents are not authorized to conduct business on Airport property without first entering into a use and permit agreement with the Authority, including providing vehicles for compensation.  Should operations continue at the Airport without proper authorization, the Authority will pursue any and all remedies available to it at law and in equity.

Pursuant to this letter, Turo and the owner of the vehicle set out below must immediately cease and desist all business operations at the Airport.

To obtain a use and permit agreement, please contact the Authority's Concessions Department at (813) 554-1418.

The subject event and vehicle details are as follows:
Date & Time: December 5, 2018 at 5:00 p.m.
Location: Economy Parking Garage: Level 5, Gold Section, Aisle 6
Vehicle Make & Model: Ford Mustang 2017
Vehicle License Plate & State: (FL) 6TXU
Name of vehicle operator/Turo agent: Hunter D. McGaughey

Regards,

John Tillacos
Executive Vice President of Operations and Customer Service

cc:    Michelle Fang, Chief Legal Officer, Turo Inc.
       Michael Stephens, General Counsel

Joseph W. Lopano, Chief Executive Officer | Robert I. Watkins, Chairman | Gary W. Harrod, Vice Chairman
Commissioner Lesley "Les" Miller, Jr., Secretary | Brig. General Chip Diehl, Treasurer | Mayor Bob Buckhorn, Asst. Secretary / Asst. Treasurer



Peter O. Knight Airport
Plant City Airport
Tampa Executive Airport

January 9, 2019

Hillsborough County
Aviation Authority
P.O. Box 22287
Tampa, Florida 33622
phone/ 813-870-8700
fax/ 813-875-6670
TampaAirport.com

Andre Haddad
Chief Executive Officer
Turo Inc.
116 New Montgomery Street, Suite 700
San Francisco, CA 94105

Dear Mr. Haddad,

The Hillsborough County Aviation Authority ("Authority") has received reports and determined that your company, Turo Inc. ("Turo"), has been conducting business operations through its app based platform and agents at Tampa International Airport ("Airport"), in violation of Policy P310, Commercial Ground Transportation, which requires a use and permit agreement to perform such business at Tampa International Airport.  As you have been previously advised on multiple occasions, both verbally and in writing, including two previous cease and desist orders from the Authority, similar to all other ground transportation operators at the Airport, Turo and its agents are not authorized to conduct business on Airport property without first entering into a use and permit agreement with the Authority, including providing vehicles for compensation.  Should operations continue at the Airport without proper authorization, the Authority will pursue any and all remedies available to it at law and in equity.

Pursuant to this letter, Turo and the owner of the vehicle set out below must immediately cease and desist all business operations at the Airport.

To obtain a use and permit agreement, please contact the Authority's Concessions Department at (813) 554-1418.

The subject event and vehicle details are as follows:
Date & Time: December 4, 2018 at 3:00 p.m.
Location: Economy Parking Garage; Level 4, Orange, Aisle 11
Vehicle Make & Model: Toyota C-HR 2018
Vehicle License Plate & State: (FL) JTCK97
Name of vehicle operator/Turo agent: Marlon Edward Soley

Regards,

John Tillacos
Executive Vice President of Operations and Customer Service

cc:     Michelle Fang, Chief Legal Officer, Turo Inc.
        Michael Stephens, General Counsel

Joseph W. Lopano, Chief Executive Officer | Robert I. Watkins, Chairman | Gary W. Harrod, Vice Chairman
Commissioner Lesley "Les" Miller, Jr., Secretary | Brig. General Chip Diehl, Treasurer | Mayor Bob Buckhorn, Asst. Secretary / Asst. Treasurer



Tampa
International
Airport

Peter O. Knight Airport
Plant City Airport
Tampa Executive Airport

Hillsborough County
Aviation Authority
P.O. Box 22287
Tampa, Florida 33622
phone/ 813-870-8700
fax/ 813-875-6670
TampaAirport.com

January 9, 2019

Andre Haddad
Chief Executive Officer
Turo Inc.
116 New Montgomery Street, Suite 700
San Francisco, CA 94105

Dear Mr. Haddad,

The Hillsborough County Aviation Authority ("Authority") has received reports and determined that your company, Turo Inc. ("Turo"), has been conducting business operations through its app based platform and agents at Tampa International Airport ("Airport"), in violation of Policy P310, Commercial Ground Transportation, which requires a use and permit agreement to perform such business at Tampa International Airport. As you have been previously advised on multiple occasions, both verbally and in writing, including two previous cease and desist orders from the Authority, similar to all other ground transportation operators at the Airport, Turo and its agents are not authorized to conduct business on Airport property without first entering into a use and permit agreement with the Authority, including providing vehicles for compensation. Should operations continue at the Airport without proper authorization, the Authority will pursue any and all remedies available to it at law and in equity.

Pursuant to this letter, Turo and the owner of the vehicle set out below must immediately cease and desist all business operations at the Airport.

To obtain a use and permit agreement, please contact the Authority's Concessions Department at (813) 554-1418.

The subject event and vehicle details are as follows:
Date & Time: December 3, 2018 at 4:30 p.m.
Location: Curbside Arrivals by Spirit
Vehicle Make & Model: Infiniti QX70 2017
Vehicle License Plate & State: (FL) 511YZU
Name of vehicle operator/Turo agent: Brian Christopher Zickafoose

Regards,

John Tiliacos
Executive Vice President of Operations and Customer Service

cc:   Michelle Fang, Chief Legal Officer, Turo Inc.
      Michael Stephens, General Counsel

Joseph W. Lopano, Chief Executive Officer | Robert I. Watkins, Chairman | Gary W. Harrod, Vice Chairman
Commissioner Lesley "Les" Miller, Jr., Secretary | Brig. General Chip Diehl, Treasurer | Mayor Bob Buckhorn, Asst. Secretary / Asst. Treasurer